PARKEY et al. v. ARCHER COUNTY et al.

No. 12913.

Court of Civil Appeals of Texas. Fort Worth.

April 8, 1933.

Rehearing Denied May 6, 1933.

Bonner & Childress and E. C. deMontel, all of Wichita Falls, for appellants.

A. H. Britain, of Wichita Falls, for appellees.

DUNKLIN, Justice.

A. W. H. Parkey and J. R. Parkey instituted this suit in the district court of Archer county against Archer county and the county judge thereof to restrain the opening of a public road across a tract of several thousand acres of land owned by the plaintiffs, a part of which was cultivated farms and a part pasture lands.

Upon filing of the petition, a temporary writ of injunction was granted by the judge of the district court restraining the opening of the road pending further hearing of the case. Later, and upon a motion of the defendants, that writ was dissolved, and the plaintiffs have prosecuted an appeal from that order.

The record shows the following order entered by the state highway commission, dated September 15, 1930: "Archer County is to proceed with construction of Unit 1 on location provided in bond issue west of Archer City. Of this about three miles is on approved location which then turns northwest to intersect State Highway #30 and to the Wichita County line. The three miles west of Archer City is to be constructed by the County on

State Highway Standards, and not less than 100 feet right of way provided. The State will then undertake, when funds are available, to construct Unit 1 from the point to intersection of Highway #30 and to the Wichita County line. Archer County to reserve further funds not to be less than fifty per cent of cost of construction north of Highway #30 which will be a 50% State and County project." ·

That highway was designated and known as an extension of state highway No. 25.

The following is a letter received by Hon. H. V. Pearston, county judge of Archer county:

"Dear Sir:

"Please be advised that the State Highway Commission at its regular meeting on September 25th, passed the following motion in connection with improvements of highway west of Archer City:

" 'Archer County is to proceed with construction of Unit 1 on location provided in bond issue west of Archer City. Of this about three miles is an approved location which then turns northwest to intersect State Highway #30 and to the Wichita County line. The three miles west of Archer City is to be constructed by the County on State Highway Standards, and not less than 100 feet right of way provided. The state will then undertake, when funds are available, to construct Unit 1 from that point to intersection with Highway No. 30 and to the Wichita County line. Archer County to reserve further funds not to be less than fifty per cent of cost of construction north of Highway #30 which will be a 50% State and County project.' Min. 3358.

"Please advise if the conditions outlined in this Minute are satisfactory to your court.

"Very truly yours,
"Gibb Cilchrist, State Highway Engineer,
"T. H. Webb, Assistant.
"By: T. H. Webb, Assistant State Highway Engineer."

The following is an order of the commissioners' court of March 23, 1931:

"A motion was made by C. L. Abercrombie and seconded by J. H. Rayborn that the record of meeting with the State Highway Commission as outlined by their order of September 15, 1930, be spread upon the minutes of this court, and same is hereby ordered to be transcribed by the County Clerk as follows:

" 'March 23, 1931.

" 'Archer County.

" 'Archer County came to be considered the proposed construction of State Highway #25 from Archer City to the Wichita County line; reference being made to an order of the Highway Commission of September 15, 1930, which reads as follows:

" ' "Archer County is to proceed with construction of Unit 1 on location provided in bond issue west of Archer City. Of this about 3 miles is on approved location which then turns northwest to intersect State Highway #30 and to Wichita County line. The three miles west of Archer City is to be constructed by the County on State Highway standards, and not less than 100' right of way provided. The state will then undertake, when funds are available, to construct Unit 1 from that point to intersection with Highway #30 and to the Wichita County line. Archer County to reserve further funds not to be less than 50% of cost of construction north of Highway #30, which will be a 50% State and County project."

" 'The Commissioners' Court accepts the provisions of this order and will proceed when called upon by the State to carry out its share of same. The County will secure the necessary right of way on the portion of said highway to be constructed by the State, as well as the right of way on the county's portion and the joint portion; it being understood that this order provides only for the grading and drainage structure from Archer City to the Wichita County line, and after that has been completed, the county and State will then jointly take such steps as necessary to complete the necessary surfacing. Carried.' "

An order of the commissioners' court at regular session of date November 9, 1931, reads as follows:

"Order approving right of way.

"There came before the court J. M. Isbell, the engineer for the State Highway Department and submitted a preliminary survey of the right of way of highway number 25 from its present terminus three miles west of Archer City to the Wichita County line, whereupon a motion was made by C. L. Abercrombie and seconded by J. H. Rayburn that the location of the right of way be approved and that the State Highway Commission be notified that the Commissioners' Court will proceed with the necessary action to procure this right of way, when the plans have been so completed that definite field notes are available, so that the location upon the ground may be described by metes and bounds, in the conveyance to be secured from the present owners of the lands to be traversed. All present voted aye."

Another order of date December 14, 1931, directed the county clerk to mail notices to plaintiffs and other property owners along the line requesting that they appear before the court to the end that negotiations might be had looking to "a friendly purchase of the right of way for Highway #25."

On April 4, 1932, the commissioners' court of Archer county entered an order for the opening and establishment of a public road

of the first class over a route referred to in the above order of the state highway commission and in accordance with the field notes prepared by the state highway engineer and filed with the commissioners' court. The proposed road traversed plaintiffs' lands. That order of the commissioners' court recited that the road would be laid out, constructed and established and maintained as a first-class public road under the provisions of title 52, articles 3264 to 3271, both inclusive, of the Revised Statutes and amendments thereof (Vernon's Ann. Civ. St. arts. 3264–3271). The names of the respective owners of the lands and the acreage owned by each which would be taken by the establishment of that road were specified in that order. That order recited that the court had found that it was necessary and advisable. that such road should be so laid out and constructed, and that necessary steps should be taken to accomplish that result. It was further recited in that order that the court would immediately take up with each and all of the landowners named in the order the matter of settlement with them for damages suffered by each of them respectively by reason of the taking of their lands for public purposes, and that a bona fide effort would be made to reach such a settlement. But no jury of view was appointed at the time to lay out the road as provided in article 6706, Rev. Statutes, and no efforts were made by the commissioners to reach a settlement of damages with the landowners and no further proceedings were had under and by virtue of that order, nor did the county commissioners file with the county judge any statement that they desired to condemn for public use by the county the lands included within the right of way of the proposed public road, with the description of such lands and with the names of the owners thereof, and that the county commissioners had failed to agree with the owners of the land on the amount of damages as provided for in article 3264 of title 52 relative to the exercise of the right of eminent domain.

Later, on May 2, 1932, the county commissioners of Archer county convened in regular session, passed another order with no reference to the former order and as an original proceeding, and in that order it was declared that there was a necessity for laying out and opening a first-class public road in Archer county, "beginning at a point in the Archer City-Megargel road, about 2.9 miles west of Archer City, Texas, and terminating at a point in the Archer-Wichita County line at Mankins, in said county, a distance of about 15 miles, and after a full discussion and consideration of the matter, the court is of the opinion that it is necessary that such new road should be opened, as a new first class road, width of 100 feet." And thereupon J. S. Melugin, W. J. Kunkel, W. C. Jones, C. F. Meurer, and A. L. Harris were appoint-

ed a jury of view to survey and describe the road, to the greatest advantage to the public, and so that the same can be traced with certainty, and that field notes of such survey be included in the report of the jury of view to be made at the next term of court. The record shows that the members of the jury of view were duly served with notice of their appointments and each and all of them took the oath required by article 6708, Rev. Statutes, to the effect that they would lay out the road in accordance with the order of the court to the best of their skill and ability and without bias or favor to any one.

After twice resubmitting the matter to the jury of view in order to insure a strict compliance with the statutes in such cases made and provided, the jury made their final report on October 25, 1932, laying out the road according to the maps and plats theretofore prepared by the highway engineer and filed in the commissioners' court, assessing damages in favor of the respective landowners, including the plaintiffs, and including in such assessment the value of the land actually taken and damages done to the adjacent lands. The damages so awarded to the plaintiffs were $215.60 as the value of 21.56 acres of their land taken by the road as right of way and $215.60 as damages to the remainder of plaintiffs' land, which amount was by order of the commissioners' court set aside as a special deposit payable to plaintiffs in the office of the county treasurer of Archer county and subject to plaintiffs' orders, with the further provision that the county at its sole cost and expense should construct a four-wire fence on each side of said road through plaintiffs' land.

Plaintiffs, through counsel, appeared before the commissioners' court and challenged the validity of the entire proceedings for the opening of the road across their land on numerous grounds, which are repeated in their petition filed in this suit to restrain the opening of the road and which will be hereafter noted, all of which objections were overruled by the commissioners' court. Thereupon plaintiffs prosecuted an appeal to the district court from the assessment of damages so made, in accordance with the provisions of article 6710, Rev. St. and that appeal is still pending and undetermined.

The record shows that the county had on hand in its road and bridge fund the sum of $3,849.74 and $27,392.56 in its highway fund, and that no bonds had been issued for the building of the highway now in controversy.

Appellants insist that the orders referred to above, entered by the commissioners' court in connection with the order of the highway commission of September 15, 1930, and the maps and plats made by the highway engineer and filed with the county commissioners, which were used and adopted by the jury of view, show conclusively that the proceedings

by the commissioners' court to lay out and establish the road in controversy were taken to establish a state highway for and in behalf of the state highway commission, without its authority and not in its name.

It is further insisted that the provisions of title 52, Rev. St. beginning with article 3264, were the only statutory provisions giving authority for the opening of a state highway by the county commissioners, and that, since none of those provisions were complied with, the final proceedings of the commissioners' court challenged in this suit were null and void for lack of jurisdiction. It was alleged in plaintiffs' petition that the state highway department had entirely abandoned the proposition embodied in the order of September 15, 1930, before the final proceedings now in controversy were taken, and had refused to institute any condemnation proceedings or to authorize such to be taken by the commissioners' court to procure a highway along any route whatever because it had no funds available for the purpose of building such a road.

It was further alleged that Archer county was without means necessary to pay the damages accruing to the property owners resulting from condemnation of their lands and to construct and maintain the road, particularly since the loss through the failure of the county depository bank of Archer City of more than $1,000,000 of the funds realized from the sale of the bonds that had been voted for another and different road which had never been constructed, and further that there was no public necessity for the proposed road and that the commissioners had abused their discretion in determining that such a necessity existed.

Article 3264 of title 52 expressly gives the right of condemnation "when real estate is desired for public use by the State or by a county, or a political subdivision of a county, or by a city or town, or by the United States Government, or by a corporation having the right of eminent domain."

Chapter 1 of title 116, Rev. Statutes of 1925, and amendments thereto now appearing as articles 6674n, 6674o, 6674p, Vernon's Ann. Tex. Civ. Statutes, provide for the construction and maintenance of a state highway system under the direct control of the state highway department, and with appropriations out of the state highway funds, and authorize the commissioners' court of any county to grant aid for the improvements by the state highway department of any section of the highway located in the county, regulating the manner of paying for such aid, the making of contracts by the state highway department for such improvements, and specifically providing that all such contracts, or contracts for such improvements, shall be made in the name of the state of Texas, signed by the state highway engineer, and approved by two members of the commission.

Article 6674n, enacted at the Fifth Called Session of the 41st Legislature, c. 79, § 1, reads in part as follows:

Section 14: "Whenever in the judgment of the State Highway Commission the use or acquisition of any land, for road right-of-way purposes, timber, earth, stone, gravel, or other material, necessary or convenient to any road to be constructed, reconstructed, maintained, widened, straightened, or lengthened by the State Highway Commission, the same may be acquired by purchase or by condemnation by the State of Texas. Provided that should the owner of such land for road right-of-way purposes, or such materials, and the State Highway Commission, or its representatives, fail to agree upon the amount to be paid therefor, then the Attorney General, at the request of the State Highway Commission, shall proceed to condemn the same for and on behalf of the State of Texas in the manner provided for condemnation of lands by the State of Texas in Title 52, Articles 3264 to 3271, inclusive, of the Revised Civil Statutes of 1925. The Highway Commission's portion of the expense of such proceedings shall be paid out of the State Highway Fund. Provided that the county in which the state highway is located may pay for same out of the county road and bridge fund, or any available county fund.

"Any Commissioners' Court is hereby authorized to secure by purchase or by condemnation on behalf of the State of Texas any new or wider right-of-way or land or lands for material or borrow pits, to be used in the construction, reconstruction, or maintenance of state highways, and to pay for same out of the county road and bridge fund, or out of any special road funds or any available county funds. The State Highway Commission shall be charged with the duty of furnishing to the county commissioners' court the plats or field notes of such right-of-way or land and the description of such materials as may be required, after which the commissioners' court may, and is hereby authorized to purchase or condemn same, with title to the State of Texas, in accordance with such field notes. Provided, that in the event of condemnation by the county the procedure shall be the same as that set out in Title 52, Articles 3264 to 3271, inclusive, Revised Civil Statutes of 1925. Provided that when condemnation proceedings are instituted, either by the Commissioners' Court of the County or the State Highway Commission, that such proceedings shall be instituted in the County where the land lies and venue is hereby fixed in such county."

In O'Keefe v. Hudspeth County (Tex. Civ. App.) 25 S.W.(2d) 625, 627, cited by appellants, it was held that condemnation proceedings taken by the commissioners' court of Hudspeth county for opening a county road were void because they were taken under pro-

visions of title 52 and not title 116, notwithstanding the observation made in the concluding portion of the opinion reading: "The evidence upon the trial hereof discloses that Hudspeth county did not intend to use the land for county road purposes, but intended it to be used as a right of way for * * * state highway No. 1."

In Cernoch v. Colorado County (Tex. Civ. App.) 48 S.W.(2d) 470, also cited by appellants, it was held that under the provisions of section 14, chapter 186, of the 39th Legislature, as amended by the Third Called Session of the 41st Legislature (chapter 10 [Vernon's Ann. Civ. St. art. 6674n]), the commissioners' court had authority to condemn land for a state highway in behalf of the state of Texas and its highway commission, and that that act was constitutional. The same authority is given in the later amendment, now article 6674n.

█ It is well settled that under the provisions of chapter 2, title 116, Rev. Statutes, the commissioners' court may, upon their own initiative, order the laying out and opening of public roads when necessary and discontinue all or any roads when it shall be deemed expedient. Robison v. Whaley Farm Corporation, 106 Tex. 633, 37 S.W.(2d) 714; 21 Tex. Jur., § 43, pp. 568–9.

█ It is our conclusion that the record shows that the commissioners' court first contemplated collaborating with the state highway commission to condemn land for the opening of the road in question as a state highway and not as a county road, but later that intention was abandoned, and that the final proceedings taken were not to establish the road as a state highway under provisions of title 52, Rev. Statutes, and amendments noted, but as a county public road of the first class under the provisions of chapter 2, title 116, Rev. Statutes. We have concluded further that all the requirements prescribed in that title necessary to make the proceedings effective were complied with. Nor can we say that the commissioners' court abused its discretion in the steps taken on the alleged grounds that there was no public necessity for the road or that the county was financially unable to open and maintain it. The performance by the commissioners' court of a statutory duty could not give rise to the cause of action asserted by appellees; and any loss suffered by them as a consequence would be damnum absque injuria. Amuny v. Seaboard Bank & Trust Co. (Tex. Com. App.) 23 S.W. (2d) 287; 12 R. C. L. 237; 26 R. C. L. pp. 757 and 760.

Numerous authorities are cited by appellants relative to procedural requirements under title 52 and holding that a failure to comply strictly therewith will render condemnation proceedings taken thereunder void; but

those cases are inapplicable to the proceedings in this case, which were taken under title 116, Rev. Statutes.

Accordingly, we have reached the conclusion that all assignments of error should be overruled and the judgment of the trial court affirmed, and it is so ordered.

On Motion for Rehearing.

█ This appeal was from an interlocutory order dissolving a writ of injunction, and our opinion on original hearing is not to be construed as decisive of any issues of fact when the case is tried on its merits.

Motion overruled.