**Garland M. LASATER et al., Appellants,**

v.

**John F. MAHER et al., Appellees.**

**No. 13800.**

Court of Civil Appeals of Texas.

San Antonio.

July 12, 1961.

Rehearing Denied Aug. 10, 1961.

Butler, Binion, Rice & Cook, Houston, Markel Heath, Harold E. Vittitoe, Falfurrias, Robert H. Singleton, Houston, for appellants.

Lloyd, Lloyd & Dean, Alice, for appellees.

BARROW, Justice.

This suit was brought by appellees, John F. Maher and wife, Lois Lasater Maher, and the Lois Lasater Maher Trust, acting by and through Lois Lasater Maher and Thomas M. Lasater, a majority of its trustees, against Garland Lasater, J. M. Brooks, County Judge of Brooks County, the Commissioners Court of Brooks County, and five individuals, constituting a jury of view appointed by the said Commissioners Court, to set aside an order of the Commissioners Court of Brooks County, declaring a roadway in said county to be a public highway. After the entry of the order by the Commissioners Court, appellees filed this suit in the District Court of Brooks County, and upon application of appellees the court issued a temporary restraining order restraining appellants, Garland M. Lasater, J. M. Brooks, County Judge, the Commissioners Court, and the jury of view, from carrying into effect the order of said Commissioners Court. The case was then tried upon its merits before the District Court, without a jury. After a trial, the court rendered judgment setting aside and holding for naught the order of the Com-

missioners, and granted a permanent injunction restraining the appellants from carrying into effect the order of the Commissioners Court.

The proceedings before the Commissioners Court were conducted and the findings and order of the court were made, under and in accordance with the provisions of Article 6711, Vernon's Ann.Civ.Stats., as amended, Acts of 1953, 53rd Leg. p. 1054, Chap. 438. There is no contention that there is any irregularity in the proceedings, nor that the proceedings failed to follow any of the provisions of the statute. Therefore, the orders of the Commissioners Court are valid and must be sustained unless they are subject to the attacks made thereon by appellees.

The proceedings in the Commissioners Court were had upon the application of Garland M. Lasater, seeking the establishment of an access road from a tract of land owned by him, being known as Survey No. 331 in Brooks County, Texas, across the lands of appellees, which road was known as the Gyp Mine Road. The Commissioners Court, after a hearing, selected and fixed the Gyp Mine Road as the road to open, and appointed a jury of view to assess the damages, in accordance with the statute. The lands of Garland M. Lasater and of appellees are substantially shown on a rough sketch attached to the opinion of this Court in Lasater v. Maher, Tex.Civ.App., 330 S. W.2d 481, which appears on page 482, and that sketch will be referred to in this opinion for location of the lands and roads. Lasater's land consists of the small section marked "331" and the upper section marked "Lasater". His land in question is known as Survey No. 331, and it is separated from the Lasater tract by Salt Lake. All of the tracts of land shown on the sketch were originally owned by Garland M. Lasater, Thomas M. Lasater, and the Trust Estate, as tenants in common, they having acquired the land under the will of their mother, Mary M. Lasater, in equal shares. Garland Lasater and Thomas Lasater were given their shares in fee, but the third share was bequeathed to the two Lasaters and Mrs. Maher as trustees for Mrs. Maher, as beneficiary of the Trust Estate. As shown on the sketch, the Gyp Mine Road extends directly west from Survey 331, across the Trust land and the Maher land, a distance of about two and one-half miles, to Highway 281, at about five miles south of Falfurrias. This road is barred by a locked gate and Garland Lasater is forbidden to use it, by an injunction granted in Cause No. 1497, hereinafter mentioned. There is another road from Survey 331, which extends from the east side of the Survey. This is a private road known as the oil field road, which runs north and south, along the east side of said survey, then turns in a northeasterly direction and extends across some six different tracts of land, owned by numerous persons in undivided interests, for a distance of about two miles, where it intersects a paved road which runs north and south along the east boundary of the Lasater tract. Since the injunction, Lasater has used this road to reach Survey 331, by borrowing a key to a locked gate, from the owner of one of the tracts of land. This man maintains the locked gate barring the road, and the persons who use the road have locks and keys of their own. Lasater has no permission to enter upon or to cross any of the other tracts. The above-mentioned paved road, farther north, intersects Farm to Market Road 2191, and still farther north it intersects Highway 285. These roads run east and west from Falfurrias. This public road affords a means of getting to and from the land marked "Lasater" on the map, but not to and from Survey 331. The above-mentioned private road and the Gyp Mine Road are the only ways of getting to or from said survey. It is otherwise completely landlocked, except that, so far as land lines are concerned, it joins the other tract marked "Lasater," but is separated by Salt Lake, as shown on the map, which lake is about 1000 feet wide and five to six feet deep in the narrowest place. Thus appellant Lasater has no means of access to said tract of land. Lasater does

not reside on said tract, but lives about five miles southwest of the City of Falfurrias.

■ Appellees attack the Commissioners Court proceedings, the findings made therein, and the order made thereunder, upon the following contentions: The proceedings are precluded by the judgments of the District Court of Brooks County in Cause No. 1369, styled Lois Lasater Maher et al. v. Garland M. Lasater et al., and in Cause No. 1497, styled John F. Maher et ux. v. Garland M. Lasater, affirmed by this Court in Lasater v. Maher, Tex.Civ.App., 330 S.W.2d 481, because all matters involving the road sought to be established were litigated in said causes, and the attempted order of the Commissioners Court establishing such road would have the effect of vacating, overruling and setting aside said judgments, and would be a collateral attack upon said judgments. Said judgments are res judicata and bar the action of the Commissioners Court, and by reason of such final judgments appellants are now estopped to establish said road.

Cause No. 1369 was a partition suit, in which the court first ordered a partition between the joint owners and appointed commissioners to divide the land into three tracts. The commissioners did so and made their report to the court, setting apart the tracts as they are shown on the sketch. Upon a hearing of the Commissioners' report, Garland M. Lasater made objection because he was not given an outlet, and moved the court to give him an easement over the Gyp Mine Road. The court denied the motion or request, and approved the report. There was no appeal from that judgment. In Cause No. 1497 the Mahers sued Lasater, seeking an injunction to restrain him from opening their gates and going through their land on the Gyp Mine Road. Lasater, by cross-action, sought a road by necessity, by implication and by prescription. The trial court granted the injunction and denied the Lasater cross-action, upon a plea of res judicata by reason of the judgment in Cause No. 1369. This Court, in affirming that judgment, held that all matters of an easement over the land for said roadway were fully adjudicated in Cause No. 1369, and barred any recovery.

We are of the opinion that neither of those judgments is res judicata barring the proceedings before the Commissioners Court to open and establish a public road under the provisions of Article 6711, supra. Neither is the Commissioners Court nor Garland M. Lasater estopped by either of said judgments. The matters in issue in the Commissioners Court proceedings were not litigated in either of said suits, nor was the right or authority of the Commissioners Court to open and establish a public road, litigated or involved in either of said suits. In fact, no such matters could have been litigated therein, because the Commissioners Court was not a party to either of said suits. We are further of the opinion that Garland M. Lasater is not estopped by either of said judgments to request the Commissioners Court to open said Gyp Mine Road as a public road. The issue involved and litigated in each of said suits was whether or not Lasater had a private easement in said road over the lands of appellees, which would give him an estate in said lands. The judgments held that he had no such easement or estate. In the proceedings before the Commissioners Court both Lasater and the court recognized the finality and binding effect of said judgments. In his application, Lasater says that he has no means of access to his land, and the Commissioners Court finds that he has none.

■ The rule is well established, that in order for a judgment in one suit to bar the bringing of a subsequent suit there must be: (1) Identity in the thing sued for; (2) identity of the cause of action, and (3) identity of the persons and parties to the action. 26 Tex.Jur. 109, Judgments, § 406. It is readily apparent that there exists no identity of parties, issues or causes of action.

Appellees contend that Article 6711, supra, as amended, is unconstitutional, in that it permits the taking of appellees' lands for a private benefit, and contravenes Article 1, § 17, Texas Constitution, Vernon's Ann.St. Appellees argue that the effect of the provision is to authorize the Commissioners Court to take and appropriate private property and apply it to the use of another individual who, alone, would be benefited, and in which the public has no interest. Appellees' contention is overruled.

Article 6711, as amended, reads in part as follows:

"Any * * * practicable route as used herein, shall mean a route which will not unduly inconvenience the owners or persons occupying the land through which such route shall be declared, that the Commissioners Court may agree on in order to avoid hills, mountains or streams through any and all enclosures, shall be declared a public highway on the following conditions:

"1. One or more freeholders, or owners of lands, * * * into whose lands there is now no public road or public means of access, who desires an access road connecting his said land with the county public road system, may make a sworn application to the Commissioners Court for an order establishing such road, * * * and stating the facts which show a necessity therefor.

"2. Upon the filing of such application the County Clerk shall issue a notice, reciting the substance thereof, directed to the Sheriff or any Constable of the County, commanding him to summon such landowners as may be affected by the opening of said road, * * * to appear * * * to contest the same, if they so desire, and to testify as to the amount of damage they will sustain, if any, by reason of the establishment of such road. * * *

"3. * * * the court may hear evidence as to the truth of such application, and if it appears that the said applicants have no means of access to their lands and premises, it may issue an order declaring the lines designated in the application, or such lines as may be fixed by the Commissioners Court, to be a public highway, and direct the same to be opened by the owners thereof and left open * * *."

Prior to the 1953 amendment, the statute authorized the application to be made by as many as ten freeholders, or one or more persons living within an enclosure, who desired a nearer, better, or more practical road to their church, mill or county seat. In the amendment, the above requirements were deleted and the statute now authorizes *"One or more freeholders, or owners of lands, persons, firms or corporations, into whose lands there is now no public road or public means of access, who desires an access road connecting his said land with the county public road system,* may make a sworn application * * *." (All emphasis used throughout this opinion is ours.) Also, prior to the amendment, the statute in Section 3, contained the following prerequisite to the Commissioners Court's action: "If the commissioners court deems the road of sufficient public importance." In the amendment this provision was deleted and instead, the requirement now reads: "* * *if it appears that the said applicants have no means of access to their lands and premises, * * *."

No authority passing upon the Act as amended has been cited, nor have we found any. However, the Act, prior to the amendment, was held to be constitutional in Phillips v. Stockton, Tex.Civ.App., 270 S.W.2d 266, where the application was by only one person who lived on the land, as then required by statute. The Supreme Court, in reversing the decision of the Court of Civil Appeals, in the same case, styled Phillips v. Naumann, 154 Tex. 153, 275 S.W.2d 464, 467, upheld the constitutionality of the

Act, but reversed the judgment on the ground that petitioner actually had a way out of his land, and on the ground that the jury in the case, upon sufficient evidence, found that the Commissioners Court did not deem the opening of the road of "sufficient public importance." No such finding is required under the present statute. The Court of Civil Appeals, in the Phillips case, said [270 S.W.2d 270]:

> "It is to the public interest to see that every citizen has a way to and from his lands and his residence in order to enable him to discharge the duties he owes, as a citizen, to the public. Some of these duties are mentioned in Art. 6711, the constitutionality of which 'rests upon the obligation of the sovereignty to afford to each member of the community a reasonable means of enjoying the privileges and discharging the duties of a citizen.'"

The Legislature in Sec. 2, declaring the purpose of the Act, and in the emergency clause, uses language which makes it certain that the Legislature considered it in the public interest "to make accessible to the public, properties belonging to such private individuals as have been deprived, or may be deprived, of any means of access to their said properties from the county public road system." The Supreme Court in Housing Authority v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 83, 130 A.L.R. 1053, held that while the question of "what is a public use" for which the right to exercise the power of eminent domain may be granted, "is a question for the determination of the courts; however, where the legislature has declared a certain thing to be for a public use, such declaration of the legislature must be given weight by the courts."

■■ Appellees contend that the judgment of the trial court should be affirmed because the court concluded that the Commissioners Court abused its discretion in its action in establishing the road in controversy. That conclusion is based on the court's finding that Lasater has a public road to the north portion of his land, and the finding that a road can be constructed across Salt Lake to connect his Survey No. 331 with the north tract. It is true that the public road exists on the east side of the north tract. It is also undisputed that it would cost from $8,000 to $10,000 to build a dam across the lake at the narrowest point. Mr. Toups, appellees' expert witness, testified that such a dam had been built across the lake on the Maher land at a much narrower point than any point on the Lasater land, and it washed out, and that in his opinion such a dam would wash out on the Lasater land. There was no testimony to the contrary. The trial court also found that appellees offered to open a road across the south boundary line of the Maher Trust land. The undisputed testimony shows that this road would be about three miles further, and that on account of very sandy land and some flats that became submerged during rainy weather, the road would be difficult to maintain. On the other hand, the Gyp Mine Road is a gypsum paved road, approximately straight from Survey 331 to Highway 281. It is fenced most of the way on one side and bordered on the other side by an abandoned railroad to the gyp mine. The selection and laying out of public roads is a matter that is vested in the Commissioners Court and in the exercise of that duty its orders can only be set aside where there is such a gross abuse of its discretion as to amount to fraudulent, capricious or arbitrary action. Jones v. Patton, Tex.Civ.App., 235 S.W.2d 192; Hidalgo County v. Johnstone, Tex.Civ.App., 137 S.W.2d 825; Parkey v. Archer County, Tex.Civ.App., 61 S.W.2d 175; McCloskey v. Heinen, Tex.Civ.App., 266 S.W. 193; Art. 6703, Vernon's Ann.Civ.Stats.

We are of the opinion that the Commissioners Court did not abuse its discretion in selecting the Gyp Mine Road. The judgment of the trial court is reversed and judgment here rendered that appellees take nothing by their suit.