**EASTEX WILDLIFE CONSERVATION ASSOCIATION et al., Appellants,**

v.

**JASPER, ET AL., COUNTY DOG AND WILDLIFE PROTECTIVE ASSOCIATION, et al., Appellees.**

No. 7049.

Court of Civil Appeals of Texas, Beaumont.

Feb. 5, 1970.

Rehearing Denied Feb. 26, 1970.

Whitworth & Whitworth, Jasper, Josiah Wheat, Woodville, James A. Pakenham, Houston, for appellants.

R. A. Richardson, Kountze, on appeal, Edward C. Fritz, Dallas, on·motion for rehearing, for appellees.

KEITH, Justice.

The appeal is from a judgment, based upon a favorable jury verdict, declaring three roads in Tyler County to be public or county roads and enjoining the defendants from interfering with the public use thereof. Our record is voluminous and the parties raise many points of both substan-tive and procedural law so that this opinion will, of necessity, be lengthy.

The defendants are the owners of the surface estate over which the roads are located, the mineral estate having been severed many years prior to this litigation. Plaintiffs did not claim to be the owners of either the surface or mineral estates in any of the land involved, nor do they assert that they were the owners of any land abutting upon or adjacent to any of the roads. They made no claim of right of user in order to reach any land in which they had any legal interest. Instead, plaintiffs contend that they have a right of user because the roads were "public" or "county" roads and they, as members of the general public, had the right to the unrestricted use thereof.

The plaintiffs did not offer any proof that any of the roads had been established or laid out under any of the provisions of the statutes, Title 116, Chapter 2, Vernon's Ann.Civ.St., nor did they offer any proof of any formal dedication by any instrument in writing or affirmative act of the landowners.

Two of the roads, Joe's Lake Road and Bush Lake Road, are located upon lands owned by Eastex, Inc., and its operating subsidiary or division, Southwestern Timber Company, and there seems little dispute between the parties that Eastex and its predecessors in title have been in possession of the land for approximately a half century. Plaintiffs contend that these two roads are "public" or "county" roads based upon the theory of implied dedication and prescriptive right. Because of the variation in the testimony as to these two roads, we will discuss them separately.

The third road is on land owned by Kirby Lumber Corporation ("Kirby") and the plaintiffs' theory is based solely·upon the theory of implied dedication. This road has not been fenced nor has any gate been placed so as to prevent its use.

Suit was filed in December, 1967 seeking a declaratory judgment that the roads in

question were public or county roads and an ancillary injunction to restrain defendant landowners from interfering with the plaintiffs in their use thereof was sought. The jury verdict was favorable to the plaintiffs and judgment was entered in accordance therewith.

It appears that the action was precipitated when Southwestern, during 1965, errected locked gates at several places along the two roads through the property of Eastex, such action being taken several months after the entry of an order by the Commissioners' Court of Tyler County abandoning the Joe's Lake Road.

■ Before entering into our discussion of the evidence relating to the three roads involved, we state, very generally, the rule relating to the establishment of public roads. Judge Gaines, in Worthington v. Wade, 82 Tex. 26, 28, 17 S.W. 520 (1891), gives us this starting point:

"All roads which have been laid out and established by authority of the commissioners' courts are public roads. Rev. Stats., art. 4315 [now Art. 6702, V.A.C. S.]. A road not originally established under the statute may become public by long-continued use and adoption as such by the county commissioners with the assent of the owner or by prescription. A road may also become public in the sense that the public have the right to use it, by dedication."

Hereafter we will discuss the evidence more in detail but it is sufficient to state at this point that there was no evidence of any kind or character from any source which tended to prove that the two roads in question (Joe's Lake Road and Bush Lake Road) had been established or laid out by the Commissioners' Court. It was affirmatively established that no formal action was taken by the Commissioners' Court of Tyler County to establish the roads.

■ In establishing public roads, the county can act only through the Commis-

sioners' Court, the individual Commissioners having no authority to bind the county by their separate actions. Canales v. Laughlin, 147 Tex. 169, 214 S.W.2d 451, 455 (1948). The court can act as a body only through its minutes. Hill Farm, Inc. v. Hill County, 425 S.W.2d 414, 419 (Waco Civ.App., 1968), affirmed, 436 S.W.2d 320 (Tex.Sup., 1969). Or, as said by Judge Gaines in Gano v. County of Palo Pinto, 71 Tex. 99, 8 S.W. 634, 635 (1888), "The commissioners' court is a court of record, and speaks through its minutes, and not by the mouths of the members of the body."

Notwithstanding the complete lack of evidence to show that either of the roads had been laid out or established by official action of the Commissioners' Court of Tyler County or proof of long-continued use thereof "with the assent of the owner," the court submitted issues as to the two roads, as illustrated by this issue:

"Do you find from a preponderance of the evidence that the Joe's Lake Road * * * [described by reference to Defendants' Exhibit No. One] was a 'County Road' as that term is defined herein, at the time Southwestern Timber Company erected locked gates across it?"

The definition accompanying the charge was: "The term 'County Road' as used in this charge is defined by Texas law to mean a public way for normal means of travel within a County under County supervision and control."

■ Applying the rules of law set forth in the cases discussed, we find no evidence of probative effect in the record which supports the jury's answer that Joe's Lake Road and Bush Lake Road were "County Roads" as defined in the charge, or in the law. It follows, therefore, that the "no evidence" points of the defendants are sustained and the answers to Special Issues Nos. 4 and 14 are set aside.

There is still another reason why the answer to Special Issue No. 4, applicable to Joe's Lake Road alone, must be set aside.

We find in our record an order of the Commissioners' Court, entered on December 23, 1964, abandoning Joe's Lake Road, the order reading as follows:

"Comm. Riley made the motion, seconded by Comm. Powell to abandon a graded road in Precinct # 4, this road is called Joe's Lake Road from Hwy 92 to Sheffield Ferry Road. All voted yes, none voted no."

Plaintiffs' witness, W. D. Ramer, who gave testimony as to his employment with the Commissioner of Precinct No. 4 and the maintenance of the road, said that he quit working the road in 1964, before the erection of any gates across the road. It seems to be undisputed in our record that the first gates were not erected across the road until some five or six months after the entry of the order of abandonment, one being placed thereon as late as 1967. This suit was instituted on December 11, 1967.

Our study of the record does not indicate that there was bad faith on the part of the Commissioners' Court in entering the order abandoning the road in December, 1964. For all that appears, the order was entered in the public interest by a lawfully constituted body acting within the scope of its delegated authority. It follows, therefore, that the road was not, under the court's definition, under the supervision and control of Tyler County *at the time of the erection of the gates.*

No one of the plaintiffs claims to own any land abutting the abandoned road nor had any of them acquired any private easements therein. The case most nearly in point which has been cited to us or which we have found in our independent research is that of Simons v. Galveston, H. & S. A. Ry. Co., 57 S.W.2d 199, 202 (Galveston Civ. App., 1933, error dism.). There a crossing over a railroad in the Town of Edna, which had been openly and generally used by the public for a period of from 18 to 40 years, was closed by an ex parte order "initiated and carried out" by the railroad companies and the Commissioners' Court, without notice to the public or compliance with the statutes. The court said:

"The prescriptive use shown of this crossing would at best only create a public easement or right to maintain it as a public way, which would at all times remain under the control of the commissioners of Jackson county while acting in good faith and presumably at least for the best interests of its citizens, and would not in such circumstances create any private rights in individuals owning land not abutting upon it."

A further pertinent holding of *Simons* is this:

"Neither, in our opinion, was it necessary for the procedure outlined in R.S. 1925, arts. 6703 and 6705, to have been followed in this instance, since it seems to have been held that they have no application to a public road or crossing that has not been originally laid out and located by a jury of view, as the undisputed facts recited show was not the case here."

For this additional reason, we sustain the "no" evidence point as to Special Issue No. 4 finding that Joe's Lake Road was a "County Road" at the time its passage was blocked by the acts of Southwestern in erecting the gates across it.

## JOE'S LAKE ROAD

The parties are in substantial agreement as to the location of the road. Generally speaking, the road begins on State Highway 92 (the Spurger-Silsbee Highway) at a point near Ben Jack Phillip's store and the County Barn, located in the V. Weiss Survey; thence it meanders in generally an east to east-northeasterly direction through the Weiss Survey onto the Sterne League; thence in a southeasterly direction through the Sterne League onto the Hurd League near an oil field camp or warehouse, where it turns generally northeasterly back onto the Sterne League; thence onto the Thompson League in a northerly direction to a

point where it intersects FM Road 1013 (sometimes known in our record as the Sheffield Ferry Road or the Kirbyville-Spurger Road). It is delineated upon a map or plat known in our record as D–1, which is referred to in the judgment declaring the road, *as shown thereon,* to be both a *public* and a *county* road.[1] The road is approximately 7.4 miles in total length.

Although the evidence is extremely lengthy, a careful review does not indicate any great divergence in the facts. The parties, however, draw diametrically opposed conclusions therefrom. It appears without contradiction that there was a road in existence for many years along the general route of the one in controversy. This was through wooded and unenclosed lands and the public generally felt free to use it as they saw fit without let or hindrance upon the part of the landowners. It likewise appears to be clear that the owners of the surface estate used the road for the purpose of removing timber from the land along with the general public.

Plaintiffs offered, for instance, Corbet Levings who had lived in the area all of his life and he said that he had been using the road "as far back as I can remember." He was then 52 years of age. W. D. Ramer, also offered by plaintiffs, was employed by the County Commissioner of the precinct in which the road was situated as a road maintainer operator. He said that he had been grading the road "on a regular run" since about 1956 and that the prior Commissioner had graded the road since "somewhere about '48, '47, or '46." A portion of the road had been constructed, according to this witness, by a County Commissioner "during the early forties" for use by the school bus in reaching the area where the oilfield workmen and their families lived. Somewhat similar testimony was given by Johnny Thomas Ramer, James Fred Swearingen, and John Edward Jeff-

coat. It is apparent from their testimony that the road was improved during the time the oil play was at its height and some of the work, at least, was done by the oil companies and their contractors.

None of these witnesses claimed to own any property in the area served by the road nor did any of them claim a right of user except as a member of the general public. No formal dedication by act or deed on the part of the surface owners was mentioned by any of the named witnesses.

Defendants, on the other hand, brought witnesses (Mock, DeShazo, and Savoie) who were employees of a road contractor employed by the oil companies, each of whom testified as to the work done for the mineral owners and operators. The County Commissioner at the time of the construction of the northern prong of the road testified that it was constructed over an area where no road previously existed. He had no conveyance from the landowners nor were any proceedings had in the Commissioners' Court with reference to the establishment of the road. He asserted that the county was reimbursed by the oil companies for the use of county equipment upon the road.

A careful review of the evidence has convinced us that the improvements made upon the roads, particularly that done with county equipment, was done at the behest of the oil companies—not the surface owners.

Under the provisions of Section 5, Article 3731a, V.A.C.S., the County Clerk made two negative certificates: (1) there was no record of any deed or conveyance from Eastex (or its predecessors in title) to the public of any right-of-way, easement, or land in any of the surveys upon which the road was located between January 1, 1930 and March 4, 1968; and (2) during the same period of time, the minutes of the Commissioners' Court did not show any

1. There is no showing that this map (D–1) is a public document, has ever been filed for record, or that it has any authenticity except as an exhibit prepared for this particular case and now a part of our record of the trial.

"record or entry of any kind showing the dedication, establishment, designation or acceptance" of the road involved through any of the surveys upon which it was situated, nor was there found any "reference to the dedication, designation or *maintenance*" thereof.

Overruling defendants' motions for peremptory instruction, the court submitted the cause to the jury as to each of the roads separately. Based upon the findings to the several issues, which we will discuss more in detail hereinafter, the court entered judgment finding that Joe's Lake Road was both a public road and a county road, as defined in the charge.

Defendants' motions to disregard each of the several Special Issues and for judgment non obstante veredicto, having been overruled, the court permanently enjoined the defendants "from committing any act to:

"interfere with, prevent, impede, and/or stop Plaintiffs and members of the public in; their respective travels along, enjoyment and use of said Joe's Lake Road, Bush Lake Road, and Sandy Creek Loop Road as a route and way of public travel;

"attempt to interfere with, prevent, impede, and/or stop Plaintiffs and members of the public in their respective travels along, enjoyment and use of said Joe's Lake Road, Bush Lake Road, and Sandy Creek Loop Road as a route and way of public travel."

Preserving their contentions by appropriate action, the defendants now contend in their first series of points that there was no evidence to support the findings (as to Joe's Lake Road) that there had been an implied dedication thereof to the public or that any prescriptive rights therein had ripened into an easement. Alternatively, defendants urge that the evidence was insufficient to support such answers and that the findings are so against the greater weight and preponderance of the evidence as to be manifestly wrong.

The judgment of the court must find a basis, if it has one, in jury findings that the public generally had acquired an easement in the right-of-way either by prescription or by implied dedication. The instructions given by the court in connection with the issues submitted, do not make it a simple matter to determine just what was submitted and what was found by the jury; consequently, we analyze the instructions given before turning to a detailed treatment of the issues.

The court defined "adversely" as meaning an "actual and visible appropriation of such road commenced and continued under a claim of right inconsistent with and hostile to the claim of the owner or owners of the land across which such road runs." In connection therewith, we find that the court defined "claim of right" as being "an intention on the part of the general public to claim the road as a public road and the right to use same as a public road the same as if such road had been dedicated to the public use by the owner or owners of the land."

The court next defined "hostile" as meaning "the using of the road by the general public with the intent to claim it to the exclusion of any inconsistent claim of use of the road by the owner or owners of the land across which it runs." This was then followed by a qualification reading:

"The use of the road by the owners and others at the same time raises the presumption that user by others is permissive only but there may be present sufficient evidence to show user by the others under a claim of right. Mere joint user of the road by the owner and the public at the same time is not determinative. If the nature of the use is such as to show to the owner that the users are claiming under a right independent of any permission from owner, there is the requisite adverseness, in other words, the mere joint use of a road by the owners and others during the same time, is not destruction of a conclusion of adverse-

ness if there are other facts present to show use by others is under a claim of right in themselves."

We omit from our discussion the definitions of tacking by privies and the relocation of a road by public authorities since the same do not appear material to our disposition of the cause.

The court submitted seven issues with respect to the road under discussion, and we now summarize the issues and the findings of the jury:

*No. 1*: Before any locked gates were placed thereon, a roadway as shown on D–1 "was dedicated, as that term is defined in this Charge, as a Public Road, as that term is defined in this Charge, by the owners of the land across which said road traveled;"

*No. 2*: The road was situated in substantially the location shown on exhibit D–1;

*No. 3* was conditionally submitted and not answered;

*No. 4* has been disposed of previously under our "County Road" holding;

*No. 5*: The "general public continuously used and traveled" the roadway described in D–1 "openly and adversely for any period of ten (10) consecutive years or longer prior to the filing of this suit;"

*No. 6*: The road so used in No. 6 was located in substantially the location shown on exhibit D–1;

*No. 7,* conditionally submitted, was not answered.

In essence, the court submitted the theory of implied dedication in Special Issues Nos. 1 and 2 while the theory of prescripton was submitted under Nos. 5 and 6. We will discuss them in the order stated.

### 1. Implied Dedication

We have noted previously that there was no atttempt at making proof of any formal or express dedication of the road as by an instrument in writing, so that the finding of dedication must, of necessity, rest upon the premise of implied dedication.

In the early case of Ramthun v. Halfman, 58 Tex. 551, 553 (1883), the court, speaking of one of the essential requisites of the establishment of a public road by dedication, said:

"An intent to dedicate the land for the purpose of the highway by the owner must be shown by his acts and declarations; and such acts and declarations should clearly and unmistakably show that he intended to dedicate the land absolutely and irrevocably to the use of the public."

The dedication need not be a formal, written document recorded in the public records, it may be created by an estoppel, as was held in Wolf v. Brass, 72 Tex. 133, 12 S.W. 159, 160 (1888):

"To constitute a dedication so as to estop the proprietor and his privies there need not be a formal grant by deed, nor is it necessary that use by the public should be continued for so long a time as to raise the presumption of a grant. It is sufficient if there has been some act or declaration upon the part of the owner of the fee, indicating unequivocally his purpose to dedicate, and the public has used the property for the purposes to which the act or declaration of the proprietor indicates it was his intention to dedicate it."

In Greenway Parks Owners Ass'n. v. City of Dallas, 159 Tex. 46, 312 S.W.2d 235, 241, 316 S.W.2d 74 (1958), the court said:

"In order to constitute dedication by estoppel or implication there must exist a clear and unequivocal intention on the part of the landowner to dedicate the same to public use and an acceptance thereby by the public.

\* \* \* \* \* \*

"This Court said in City of Houston v. Scanlan, 120 Tex. 264, 37 S.W.2d 718, 720, that:

" 'The vital principle, as seen from the authorities, upon which the doctrine of dedication rests, is the intention of the owner to dedicate. This intention may be implied from the owner's acts, coupled with the intention with which he did the acts. \* \* \*

" 'But the intention to dedicate must be shown or be inferable, by sufficient evidence, from the owner's acts.'

\* \* \* \* \* \*

"The intention to dedicate must be shown by something more than an omission or failure to act or acquiesce on the part of the owner."

One of the leading cases on the subject is Owens v. Hockett, 151 Tex. 503, 251 S.W.2d 957, 958 (1952), wherein the court said:

"Our courts recognize the doctrine that a dedication of land to public use need not be shown by deed, nor by public use for any particular length of time. It is sufficient if the record shows unequivocal acts or declarations of the landowner, dedicating same to public use, and where others act on the faith of such dedication, the landowner will be estopped to deny the dedication, or to make any future use of the property inconsistent with any purpose for which the land was dedicated. Common-law dedications, such as the one here involved, are subdivided into two classes, express and implied. 'In both it is necessary that there should be an appropriation of land by the owner to public use, in the one case by some express manifestation of his purpose to devote the land to the public use, in the other by some act or course of conduct from which the law will imply such an intent.' Elliott, Roads and Streets (2d Ed.) p. 121; \* \* \*"

For other cases upon the same subject, varying with the facts presented, we call attention to the following: Gooding v. Sulphur Springs Country Club, 422 S.W.2d 522 (Tyler Civ.App., 1967, error dism.); City of Garland v. S. H. Lynch & Associates, 413 S.W.2d 480 (Dallas Civ.App., 1967, no writ); Mallett v. Houston Contracting Co., 388 S.W.2d 216 (Beaumont Civ.App., 1965, error ref. n. r. e.); Dowlen v. Klapper, 381 S.W.2d 123 (Amarillo Civ. App., 1964, no writ); Maddox v. Maxwell, 369 S.W.2d 343 (Tex.Sup., 1963); Seaway Co. v. Attorney General, 375 S.W.2d 923 (Houston Civ.App., 1964, error ref. n. r. e.); Chambers County v. Frost, 356 S.W.2d 470 (Waco Civ.App., 1962, error ref. n. r. e.); Dunn v. Deussen, 268 S.W. 2d 266 (Fort Worth Civ.App., 1954, error ref. n. r. e.); and Brown v. Kelley, 212 S.W.2d 834, 837 (Fort Worth Civ.App., 1948, no writ), cited with approval in Owens v. Hockett, supra.

The defendants in their original brief assert that Joe's Lake Road was situated upon lands acquired by Houston Oil Company of Texas in the year 1902; that the surface and mineral estates were severed in 1928; that the mineral estate was in American Republics Corporation (ARC). during the development of the Joe's Lake Oil Field and finally passed to the present owners, Atlantic Refining Company and Sinclair Oil & Gas Company, neither of whom are parties to this suit. It was likewise shown that Southwestern Settlement & Development Company, defendants' predecessor in title, acquired the surface estate in 1928 and that title thereto passed into the defendants. It is also asserted that the surface owners have been claiming the entire surface estate since the acquisition thereof in 1928. Plaintiffs do not challenge these statements and we accept the same as correct. Rule 419. The foregoing résumé is made for the purpose of simplifying this appeal only, and is not made to bind any person.

We recognize and accept the rule that where the mineral and surface estates

have been severed, each estate may be one in freehold, or fee simple. See Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 299, 29 A.L.R. 607 (1923); Slack v. Magee Heirs, 252 S.W.2d 274, 278 (Galveston Civ.App., 1952), affirmed 152 Tex. 427, 258 S.W.2d 797 (1953). Having the dominant estate, the owners of the mineral estate (or their privies) "had the right to use as much of the premises, and in such a manner, as was reasonably necessary to comply with the terms of the lease and to effectuate its purposes." Humble Oil & Refining Co. v. Williams, 420 S.W.2d 133, 134 (Tex.Sup., 1967), involving the construction of a road by the lessee with the surface owner claiming damages therefor.

Our record shows conclusively that the development of the oil field, American Republics Corporation (ARC), the then owner of the mineral estate, required the use of the surface and the construction of the roads. This was done, as is clearly shown in our record, through contractors, its own forces, and in some instances by county equipment. Such acts, however, were those of ARC, not the acts of the owners of the servient surface estate. Had an unreasonable use been made of the surface, the owner of the servient estate had a cause of action. *Williams*, supra, and cases therein cited. But, we have no such situation here. The surface owners made no complaint, insofar as our record shows, of the use to which ARC made of the surface; and, plaintiffs are in no position to make and do not make any such complaint.

▆▆▆▆ Instead, the plaintiffs contend, in effect, that because the defendants owning the surface, did not complain of the lawful use being made of their surface by ARC, such amounted to an implied dedication of the surface to the public. Such a theory is neither sound nor one authorized in the law. The question before us is not whether or not the ARC was authorized to or did in fact intend to dedicate a part of the surface estate to

the public. Even if the owners of the minerals had executed a solemn instrument which was filed in the deed records, it would not have been binding upon these defendants until they joined therein. As was said in Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 202 (Tex.Sup., 1962):

"It is elementary that one corporation cannot dedicate land owned by another or grant easements over land not owned by it. Robbins v. Houck, 251 S.W.2d 429 (Tex.Civ.App., 1952, writ refused, n. r. e.)."

See also Dinwiddie v. American Trading and Production Corp., 373 S.W.2d 867, 869 (El Paso Civ.App., 1963, no writ), and cases therein cited.

In our review of the "no evidence" points raised with reference to implied dedication, we have viewed the evidence in the light most favorable to the plaintiffs, the adverse evidence. Owens v. Hockett, supra. We have been unable to find any evidence of a probative nature showing a dedication of the right-of-way to the public use.

▆▆▆ Plaintiffs labored under the burden of making proof that there was "a clear and unequivocal intention on the part of the landowner to dedicate the same to public use * * *" [which] "must be shown by something more than an omission or failure to act or acquiesce on the part of the owner." (*Greenway Parks* Case, supra, 312 S.W.2d at 241). The evidence which we have summarized does not meet the requirement of the cases we have cited previously. There is no evidence in this record which will support a finding that the landowners "clearly and unmistakably * * * intended to dedicate the land absolutely and irrevocably to the use of the public." Absent such evidence, plaintiffs may not prevail under the theory of implied dedication.

In Farnie v. Fair Store, Inc., 304 S.W.2d 752, 759 (Beaumont Civ.App., 1957, error ref. n. r. e.), this court quoted with approval

from Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063 (1898):

"* * * it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence.'"

*Farnie* was cited with approval in Texas Sling Co. v. Emanuel, 431 S.W.2d 538, 541 (Tex.Sup., 1968).

### 2. Prescription

Turning to the issues on prescription (Special Issues Nos. 5 and 6) we again review the evidence from the standpoint most favorable to the plaintiffs and disregard all adverse evidence. Owens v. Hockett, supra.

The right claimed by prescription rests upon the presumption that the owner has granted the easement, and the grant has been lost. City of Austin v. Hall, 93 Tex. 591, 57 S.W. 563, 564 (1900). The jury found, and there is adequate evidence to support the finding, that the use of the road had been continuous and uninterrupted for at least ten years, one of the requirements for a prescriptive right to mature. Greenway Parks Owners Ass'n v. City of Dallas, supra; Robison v. Whaley Farm Corporation, 120 Tex. 633, 37 S.W.2d 714, 716, 40 S.W.2d 52 (1931); Ladies' Benev. Soc. of Beaumont v. Magnolia Cemetery Co., 288 S.W. 812 (Tex.Comm.App., 1926); Eakens v. Garrison, 278 S.W.2d 510, 515 (Amarillo Civ.App., 1955, error ref. n. r. e.).

■ But, the finding in Special Issue No. 5 that the road had been used "openly and adversely" for a period of ten years does not find any support in the evidence. Granted that there is evidence to support the fact of *use,* there is no evidence that the use was either *hostile or adverse* to the owner's use thereof. It was said in Othen

v. Rosier, 148 Tex. 485, 226 S.W.2d 622, 626 (1950):

"An important essential in the acquisition of a prescriptive right is an adverse use of the easement. 'Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership.'"

■ So long as the use of the roadway is consistent with the rights of the owner, it may never ripen into a prescriptive easement, regardless of the length of time. O'Connor v. Gragg, 161 Tex. 273, 339 S.W. 2d 878, 881 (1960). We now paraphrase this language taken from O'Connor (at p. 880), and adopt it as applicable to our case: There is no evidence in this record to the effect that the defendants had no right to the full enjoyment of the roadway along with others. There is no evidence which even tends to show a right, or a claim of right, of either the plaintiffs or the public to use the roadway to the exclusion of defendants' right to use the roadway involved. See also: Hollan v. State, 308 S. W.2d 122, 124 (Fort Worth Civ.App., 1957, error ref. n. r. e.); Rust v. Engledow, 368 S.W.2d 635, 638 (Waco Civ.App., 1963, no writ); Gooding v. Sulphur Springs Country Club, supra (422 S.W.2d at p. 525).

We are not persuaded by plaintiffs' *sole citation of authority* under these points [Continental Am. Life Insurance Co. v. McCain, 412 S.W.2d 666 (Beaumont Civ. App., 1967, no writ)]. We say, as did Justice Smith in O'Connor, "It follows that the judgment * * * cannot stand on the theory that respondent [plaintiffs here] or the public had acquired a private or public easement by prescription." (339 S.W.2d at 881.)

Consequently, finding that Joe's Lake Road was not established by prescription

or by dedication, we sustain defendants' points 1(a), 1(b), 1(c), 4 and 7. Insofar as the judgment relates to Joe's Lake Road, it is reversed and judgment here rendered for the defendants.

## BUSH LAKE ROAD

Again, the parties are in substantial agreement as to the location of the road. For a distance of approximately three and seven-tenths miles, this road is along the same route and common to Joe's Lake Road. However, in the Sterne League, the roads branch with the Bush Lake Road proceeding in a south-easterly direction through the Hurd, Cushing, and Collins Leagues to its dead-end in the Millhom League. Its overall length is approximately 8.3 miles.

To a large extent, the testimony with reference to this road is the same as that relating to Joe's Lake Road and similar issues were submitted. Again, it was the development of the oil fields which brought about the improvement of the road and the use of county equipment thereon. What we said of Joe's Lake Road with reference to use and maintenance applies with equal vigor to the road now being considered. There are, however, two slight differences in the facts which we shall note: (a) there were several privately owned tracts reached by this road (by which we mean tracts of land not owned by the defendant timber companies); and (b) the evidence with reference to the laying out of a road in the area, its discontinuance, and later abandonment.

As to the first contention, the short answer is that none of the owners of the small tracts of land are parties to this suit and are not seeking any relief. The claimed right of ingress and egress to the property so owned, i, e., right by necessity, has not been and cannot be successfully invoked in this case. [2]

Over the objections of the defendants, there was admitted into evidence an order of the Commissioners' Court dated March 15, 1894 appointing a jury of view to lay out a road from "Spurger via the J. W. Chapman Ranch Thence to John Calloways field to intercept the road leading from Village Mills, Hardin County, Texas, to Yellow Bluff." No further formal action by the Commissioners' Court was shown with reference to this road. However, over the objections of defendants, there was offered into evidence an order of the Commissioners' Court dated June 24, 1894 appointing road overseers "of the Spurger & Village Mills Road, Precinct No. 118 which is bounded as follows, towit: Beginning at Ranch Ending at Spurger." Plaintiffs offered evidence to support their contention that this was a part of the road now known in our record as "Bush Lake Road."

Countering this evidence, defendants offered in evidence an order of the Commissioners' Court dated November 6, 1907 accepting the road overseer's report wherein he stated that he had "discontinued" the "Spurger and Ranch Road" and had apportioned the hands assigned thereto to other roads. No other formal action of the Commissioners' Court with reference to this road appears in our record although the present County Commissioner did testify that he used the county equipment on a part of the road for a while before it was closed by the defendants.

The jury found, as it had in connection with Joe's Lake Road, that the landowners had dedicated the road to the public, that it had been used continuously for more than ten years before the locked gates were placed across it, and that it was a "county" road.

We will assume for the purpose of this discussion that the petition for the establishment of the road (March 15, 1894) was sufficient to authorize the entry of the

2. See generally: Othen v. Rosier, supra; Duff v. Matthews, 158 Tex. 333, 311 S.W.2d 637, 643 (1958); Maher v. Laster, 163 Tex. 356, 354 S.W.2d 923 (1962); Estate of Waggoner v. Gleghorn, 378 S.W.2d 47, 48 (Tex.Sup., 1964).

order appointing a jury of view. (Article 6705, V.A.C.S. then in effect.) This being the only proceeding by the court with reference to the establishment of the road under statutory procedure, it was wholly ineffective to accomplish the purpose. Haverbekken v. Hale, 109 Tex. 106, 204 S.W. 1162 (1918); Montague County v. White, 241 S.W. 740 (Fort Worth Civ.App., 1922, error dism.). The order in question did not constitute any evidence of the legal establishment of a road.

■ The order of November 6, 1907, discontinuing the road (assuming it to be the road under discussion as contended for by the parties), was within the delegated authority of the Commissioners' Court, the rule governing the situation being aptly set out in Parkey v. Archer County, 61 S.W.2d 175, 179 (Fort Worth Civ.App., 1933, error ref.):

> "It is well settled that under the provisions of chapter 2, title 116, Rev.Statutes, the commissioners' court may, upon their own initiative, order the laying out and opening of public roads when necessary *and discontinue* all or any roads when it shall be deemed expedient. Robison v. Whaley Farm Corporation, 120 Tex. 633, 37 S.W.2d 714; 21 Tex.Jur., § 43, pp. 568–9." (Emphasis supplied.)

■ Our comments with reference to Joe's Lake Road apply to the remaining contentions of the plaintiffs. The authorities previously cited are equally applicable

here with reference to dedication and prescription. So holding, we sustain defendants' points 2(a), 2(b), 2(c), 5 and 6. The judgment as to Bush Lake Road is reversed and judgment here rendered for defendants.[3]

### SANDY CREEK LOOP ROAD

Our record with reference to this road is considerably different from that we found when we were dealing with the other two roads. The land is owned by Kirby Lumber Corporation (hereinafter referred to as Kirby) and only two witnesses testified with reference thereto. We take this statement from Kirby's brief since it is not seriously challenged by the plaintiffs:

> "There appears to be little, if any, real dispute about the facts concerning such road. The record does not reflect who built it, but the W.P.A. apparently grubbed the stumps in 1940. It lies generally in open country, it not being fenced, and such fences that do exist being located around people's homes. The witness Gore, as well as other people, have traveled such road for many years. The defendant Kirby has approximately 27 tenants living in the area of this road and they, as well as other people living in the area, use such road, indeed even as does the defendant Kirby. *So far as Kirby was or is presently concerned such people are free to make such joint use.*

> "With respect to this road such is the state of the record as developed by the

3. Our disposition of this cause does not require us to pass upon the points complaining of jury misconduct and an unauthorized communication by the trial judge with the jury during the course of the deliberations. The jury misconduct asserted could only affect the Sandy Creek Loop Road (Kirby), and the evidence with reference to the status of that road is largely undisputed. The misconduct, if it did in fact occur, was harmless. Rule 434.

However, the point charging the trial judge with misconduct in giving an additional instruction to members of the jury while they were deliberating presents a

more serious complaint. A trial judge should observe the provisions of Rules 285 and 286 in communicating with the jury after the cause has been submitted for their determination. These rules, followed carefully, permit additional instructions to be given. Violations thereof will require us to set aside the verdict upon a showing of prejudice. Ross v. Texas Employer's Insurance Association, 153 Tex. 276, 267 S.W.2d 541, 543 (1954). We do not find that prejudicial error resulted here *only* because of our holdings with reference to the "county road" issues, supra.

plaintiffs in an effort to discharge the burden they assumed of attempting to prove that the public had acquired such road by dedication or by prescription. By their answer to Special Issues Nos. 15 through 18 the jury found the public to have acquired such road by dedication and by prescription and the Trial Court entered its judgment to such effect." (Emphasis supplied.)

Plaintiffs add thereto the fact that the evidence showed without dispute that the county had been maintaining the road for public use since the W.P.A. grubbed out the stumps in 1940. Plaintiffs concede that the facts outlined "may not be sufficient to make out a case under the so-called prescription laws pertaining to roadways obtained by prescription or adverse use." The concession so made is in accord with the law as we have stated it in the earlier portions of this opinion.

▪ Plaintiffs contend, however, that the evidence discloses "a classic example of dedication," relying upon Owens v. Hockett, supra (151 Tex. 503, 251 S.W.2d at 958). We agree with the plaintiffs. Brown v. Kelley, 212 S.W.2d 834, 837 (Fort Worth Civ.App., 1948, no writ), cited with approval in Owens v. Hockett, supra.

Defendants' points 3(a), 3(b), 3(c), 6 and 9 are overruled.

Our holding with reference to the Sandy Creek Loop Road makes it necessary for us to consider the defendants' remaining points addressed to that particular road. We have examined each of the points so assigned; and, in view of the lack of dispute concerning the existence of the road, except for one, each loses its materiality. We find that no harmful error was committed with reference thereto. Rule 434.

By their fifty-sixth point of error, defendants, including Kirby, complain of the indefinite description of the roads involved in this appeal, the point being reproduced in the footnote.[4] The Special Issue submitting dedication of the Sandy Creek Loop Road, which we have found to be without substantial dispute in the evidence, read:

"Do you find from a preponderance of the evidence prior to December 11, 1967 [the date of filing of the suit], *a roadway known as the Sandy Creek Loop Road and identified on Plaintiffs' Exhibit 13 from point 'A' on Farm Road 92 to point 'E' to point 'D' thereon at Farm Road 92* was dedicated, as that term is defined herein, as a Public Road by the owners of the land across which said road traveled?"

The jury answered "Yes" to this and to the following issue submitting the question of dedication of the same road as the same appeared on Plaintiffs' Exhibit No. 13, "from point 'E' to point 'B' to point 'C' thereon at Farm Road 92." These issues were copied into the judgment and formed the basis for this finding of fact found therein:

"It is accordingly ORDERED, ADJUDGED, and DECREED that:

\*    \*    \*    \*    \*    \*

"4. The Sandy Creek Loop Road, as described and identified in said Special Issues and upon Plaintiffs' Exhibit 13 is a a 'public' road."

Based upon this legal conclusion having as its basis the answers to Special Issues Nos. 15 and 16 (as applied to the Sandy Creek Loop Road), the court enjoined the defendants, including Kirby, as has been indicated earlier in this opinion. There is no other description of the location

---

4. "There being no definite description in the Judgment of the three roads that are the subject matter of the injunction imposed upon defendants, either as to actual location on the ground or as to width or classification, the Judgment does not clearly and adequately inform de-fendants as to the subject matter of the injunction imposed upon them and the Judgment is too vague and indefinite to permit enforcement thereof, and the Trial Court erred in rendering such Judgment and in refusing to set it aside and grant a new trial herein."

of the road, the surveys upon which it is situated, its width, course and distance, or other information from which we may learn its location. Plaintiffs' Exhibit No. 13 has been sent to us in original form, and insofar as this record shows, this court has the only possible means of ascertaining even the general location of the road.

Rule 683 contains this language:

"Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; *shall describe in reasonable detail and not by reference to the complaint or other document,* the act or acts sought to be restrained; * * *" (Emphasis supplied).

The thrust of the point under discussion is the exact opposite of what was faced in City of Fort Worth v. McDonald, 293 S.W.2d 256, 260 (Ft. Worth Civ.App., 1956, error ref. n. r. e.). There the judgment referred to the complaint for the reasons prompting the trial judge to grant the writ. There the court disposed of the point in this language:

"T.R.C.P. 683 does not forbid reference to the petition in the statement of reasons for an injunction; *the prohibition of the rule is against such reference for definition of the acts enjoined.*" (Emphasis supplied).

Only by reference to Plaintiffs' Exhibit No. 13, a "document" as mentioned in the rule, can defendants know what they are restrained from doing. In Lowe & Archer, Injunctions and Other Extraordinary Proceedings, § 355, p. 370, the rule is stated, "and the particular matters which the defendant is commanded to do or refrain from doing must be stated so clearly that there can be no reasonable doubt as to what is required in order to comply therewith." See also, Borden Co. v. Local No. 133, etc., 152 S.W.2d 828, 834 (Galveston Civ.App., 1941, error ref.); Villalobos v. Holguin,

146 Tex. 474, 208 S.W.2d 871, 875 (1948); San Antonio Bar Ass'n v. Guardian Abstract & Title Co., 156 Tex. 7, 291 S.W.2d 697, 702 (1956). Compare, Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549, 552 (1953).

■ The requirement of Rule 683, supra, is mandatory (Transport Co. of Texas Case, supra) and the reasons therefor are as stated in Gulf Oil Corporation v. Walton, 317 S.W.2d 260, 264 (El Paso Civ.App., 1958, no writ):

"It has long been elementary that an injunction must be definite, clear and concise, leaving the person enjoined in no doubt about his duties, and should not be such as would call on him for interpretations, inferences or conclusions. In short, it should leave nothing for further dispute."

It follows, consequently, the injunction granted is too vague and general and does not properly advise the defendant, Kirby, of the rights the plaintiffs have over specific portions of Kirby's lands and what rights of ownership it may still enjoy and assert without restraint.

■ The judgment enjoining the defendant Kirby from obstructing the Sandy Creek Loop Road is here and now reversed solely because of the vagueness of the location and width of said road. We have no way by which we can arrive at a proper form of judgment to enter in this cause and it is obvious that a survey of the road in its entirety must be made before an enforceable decree can be entered. The cause is, therefore, reversed and remanded to the trial court for the entry of an appropriate judgment fully describing the Sandy Creek Loop Road by a legal and lawful description thereof, including the width of the roadway.

Reversed and Rendered in part; and in part, Reversed and Remanded.