# NO. 12-07-00222-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MILLARD VAUGHN,*<br>*APPELLANT* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *PAUL DRENNON AND MARY DRENNON,*<br>*APPELLEES* | § | *SABINE COUNTY, TEXAS* |

## MEMORANDUM OPINION

Millard Vaughn appeals, for the second time, from a permanent injunction entered against him in a nuisance action filed by his neighbors, Paul and Mary Drennon. Vaughn raises ten issues attacking the trial court's judgment. We modify and affirm as modified.

### BACKGROUND

The Drennons' property shares a common boundary with Vaughn's property. Vaughn's property is at a higher elevation, and he made some changes to the land near the boundary. After finding water damage to their property, the Drennons filed suit. In 2005, the trial court entered a permanent injunction against Vaughn, which he appealed. This court determined that the trial court did not err in ordering Vaughn to alter the slope of his property to alleviate the drainage problem, but remanded the cause to the trial court to clarify just how he was to do so. *See Vaughn v. Drennon*, 202 S.W.3d 308, 316-17 (Tex. App.–Tyler 2006, no pet.).

Upon remand, the trial court held a hearing at which both sides presented evidence. Three months later, the trial court signed a judgment granting the Drennons' application for a permanent

injunction. The trial court ordered Vaughn permanently restrained from damaging or destroying the Drennons' personal property or real estate, communicating with them in any manner, and causing bodily harm to them. Additionally, the court ordered Vaughn to correct the drainage problem by

> filling in the ditch along Plaintiffs' fence line with concrete or other permanent material, to bring this up to a level where it will not slope toward Plaintiffs' fence, and it is further ORDERED that Defendant Millard Vaughn dig a ditch along all the distance of Defendant's property line which adjoins the property of Plaintiffs and other property owners, such ditch to extend from the cove to the main body of the lake. The ditch to be dug is to run parallel to Defendant's property line and is to begin five feet from such property line and extend into Defendant's property an additional five feet, making it a five foot wide ditch with a depth of 18 inches.

Vaughn appealed the trial court's judgment.

### WRONGFUL ACT

In his first, second, and third issues, Vaughn contends the trial court erred in granting a permanent injunction to remedy a situation that no longer exists, there is no evidence of a wrongful act causing harm, and there is no evidence that the court-ordered measures would remedy any harm. He also argues that the wrongful conduct has been abated and he has remedied the situation. Therefore, he maintains, there is no substantial and probative evidence of any actual irreparable injury or any imminent threat of irreparable harm.

**Applicable Law**

Injunctive relief may be granted only on a showing of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *Id.* at 313. A trial court retains jurisdiction to review, open, vacate, or modify a permanent injunction on a showing of changed conditions. *City of San Antonio v. Singleton*, 858 S.W.2d 411, 412 (Tex. 1993) (op. on reh'g). Thus, the trial court has authority to amend, alter, or dissolve the injunction if either the factual situation or the controlling law has changed since its entry. *See Kubala Pub. Adjusters, Inc. v. Unauthorized Practice of Law Comm.*, 133 S.W.3d 790, 795 (Tex. App.–Texarkana 2004, no pet.).

**Discussion**

When we remanded this case, we did not instruct the trial court to review the merits of the injunction. If the viability of the injunction could be attacked on remand, it would have to be on the

basis of changed conditions or law. Vaughn argues only changed conditions.

At the hearing after remand, Mr. Drennon testified that, since the April 2005 judgment was signed, Vaughn had removed the timbers and done a "bunch" of leveling, moving the dirt that had been piled up on the timbers. Also, Vaughn installed a "seal fence" to stop erosion. Further, Drennon installed a solid metal fence on his property that prevents runoff on his back fence.

Lynn Lovett, a registered land surveyor, did a topographical survey of Vaughn's property in December 2006 showing where the drainage flows. In response to leading questions, he agreed that the Vaughn property contains the crown of a hill which naturally slopes down toward the lake in all directions just as "when God made it." He said the natural flow of the water would follow that slope. He testified that he saw nothing on the Vaughn property that would deter the natural flow of water.

Vaughn testified that he removed the timbers and smoothed out the dirt where they had been. He explained that where his property meets the Drennons' property sand is twenty-eight inches deep. In an effort to prevent erosion, he had placed and reset a seal fence approximately eight times. Vaughn explained that he had cut up and burned some downed trees on his property and cleared some stumps. He had also permitted others to cut dying or damaged trees on his property to be used as firewood.

Thus, Vaughn argues that since he removed the timbers that he had deliberately placed near the Drennons' boundary to force water onto their property, the water was draining in its natural state and there was no action on his part to be enjoined. But we, and the trial court, are entitled to consider the evidence from the 2005 hearing. In addition to placing the timbers in a manner to channel water directly onto the Drennon property, Vaughn had taken other actions that contributed to the problem. Vaughn had removed a pipe that was in place for drainage at the time he bought the property. Vaughn did not allow Drennon to maintain a drainage ditch he had, with permission, dug on the Vaughn property, and it filled in. In 2004, Vaughn removed trees from a portion of his property, clearing out a twenty-five to thirty foot area from the top of the hill down to the Drennon property line. All of these acts contributed to the drainage problem. This is confirmed by Lovett's statement at the 2007 hearing that he saw nothing on the Vaughn property that would deter the natural flow of water. At the time Vaughn bought the property, there were pipes, ditches, and trees diverting or at least slowing down the natural flow of water. Further, as neighbor Harold Crocker

3

explained at the 2005 hearing, "[I]f God fixed it back, probably it would be the same thing it used to be." But if man fixed it, "it could be fixed where it could either be more water go[ing] away from [the Drennon property] or it could be fixed where more water could go into it."

The record supports a finding that, although there were some changed conditions, the Drennon property was still subject to damaging drainage. On cross examination, Lovett agreed there had been trees cut down, which would speed up the flow of water. Drennon testified that he was still having problems with water coming onto his property. He said that what had been done had caused more problems. Drennon later clarified, stating that Vaughn was "still funneling water down through" the northwest corner of the fence. A neighbor, William Tatum, testified that a ditch was needed to stop the water from going across the Drennons' property and the ditch next to their fence line needed to be filled in. Accordingly, the trial court did not err in granting the permanent injunction restraining Vaughn from damaging or destroying the Drennons' personal property or real estate or by ordering him to correct the problem by filling in the ditch along the Drennons' fence line and digging a drainage ditch on his property. *See Vaughn*, 202 S.W.3d at 316. We overrule Vaughn's first, second, and third issues.

## RIGHT TO NATURAL DRAINAGE

In his fourth issue, Vaughn contends the trial court's injunction infringes on his legal right to have surface water drain naturally off his property onto lower estates. He argues that the injunction attempts to prevent all drainage onto the Drennons' property in violation of law that states the lower estate is bound to accept drainage from the higher estate.

It is settled law in Texas that "water which naturally flows from higher to lower land may continue to do so without subjecting the upper owner to any liability therefor." **Bunch v. Thomas**, 121 Tex. 225, 229, 49 S.W.2d 421, 423 (1932). However, the lower estate is not required to receive surface water that has been "augmented or made more burdensome by the acts or industry of man." *Id.* at 230, 49 S.W.2d at 423.

As explained above, the Vaughn property is not in its natural condition, just as "when God made it." Trees and underbrush have been removed. Ditches have been dug and filled in. Vaughn, in 1996, lowered the ground level behind the Drennons' property. In 2004, Vaughn did more dirt

4

work behind the Drennons' property, built earthen dams, placed timbers there, and later removed them, smoothing out the land. Approximately eight times, Vaughn replaced and reset the seal fence, smoothing the dirt down each time. Accordingly, the water flow onto the Drennon property has been made more burdensome by the acts of man. *See id.* Therefore, the Drennon property is not bound to accept drainage from the Vaughn property. *See id.* We overrule Vaughn's fourth issue.

## BREADTH OF INJUNCTION

In his fifth issue, Vaughn contends the trial court erred in requiring him to take corrective measures on parts of his property that had no relationship to the Drennon property, thereby granting injunctive relief to neighbors who were not parties to this case. In his sixth and seventh issues, Vaughn asserts the injunction is overly broad because it grants relief beyond that prayed for in the Drennons' petition and beyond what was necessary to prevent any harm to the Drennons. He argues there is no evidence that a ditch along all boundaries with all neighbors was required to restore the natural flow onto the Drennon property.

An injunction should not be so broad as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. *Holubec v. Brandenberger*, 111 S.W.3d 32, 39-40 (Tex. 2003). On the other hand, an injunction should be broad enough to prevent a repetition of the evil sought to be corrected or stopped. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co*., 156 Tex. 7, 15, 291 S.W.2d 697, 702 (1956).

The record shows that there is a crown of a hill on the Vaughn property that slopes down toward the lake in all directions. Harold Crocker testified at the 2005 hearing, explaining that he had owned property near the site of this dispute since the early seventies and lived there since 1990. Over the years he had helped the Drennons, and neighbors on both sides of them, with their drainage problems. Crocker explained that the natural flow of drainage from the Vaughn property, which is like a dome, is in four different directions. It flows toward the Drennons' place, toward the neighbors on either side of the Drennons' place, and back on the Vaughn property. At that hearing, Vaughn's brother Earnest Vaughn, who also owns property there, had pointed out that a ditch behind the Drennons would divert water to the McGees who live next door, and if the ditch were dug down to the McGees' property, the water would drain onto the Crocker property. Vaughn explained that

5

in 1996 or 1997, at Drennon's request, he dug a ditch behind the Drennon property and turned it so the water would stay on his property instead of draining to the McGee or Crocker properties. In 2004, when Vaughn first built the earthen dams behind the Drennon property, before he added the timbers, McGee and Crocker both complained that he had caused more water than usual to drain onto their properties. Vaughn also testified that if he put a dam against the Drennons' fence, it would cause water to flow onto the McGee and Crocker properties.

Wade Blackwell testified in 2005, explaining that when Vaughn put the timbers behind the Drennon property, it caused drainage problems on his property leading to very serious septic tank problems. Every time there was a big rain, the water would run off Vaughn's property down onto his and the septic tank fill lines would not drain. He explained that part of his property is uphill from Vaughn's property, but part is not.

In their petition, the Drennons asked the court to stop Vaughn from committing acts that negatively affected the natural drainage of surface water. The evidence shows that, due to the topography of the Vaughn property and the adjacent tracts of land, addressing the drainage issue in one area affects the drainage in other areas. In that sense, the corrective measures have a relationship to the Drennon property. The injunction must be broad enough to prevent a repetition of damaging drainage problems. *See id.* The trial court would not be entitled to order Vaughn to correct the drainage problem on the Drennon property in a manner that created additional problems for neighboring property owners. Digging the ditch only along the Vaughn/Drennon boundary would do just that. While the record supports the option of digging a ditch along the Vaughn/Drennon boundary and then taking it into the Vaughn property for a distance on each end, there is no requirement that the trial court choose that remedy instead of the one it ordered. We overrule Vaughn's fifth, sixth, and seventh issues.

## VAGUENESS

In his eighth issue, Vaughn contends the injunction is impermissibly vague because it does not adequately describe the location of the ditch and the parties' property lines. He argues that the order does not describe with particularity the path and direction of the ditch and that the Drennons should have provided a metes and bounds description of the properties. In a supplemental brief,

Vaughn adds the argument that the description of the location of the ditch is problematic because it requires the ditch "to extend from the cove to the main body of the lake" while his property does not border the cove.

Orders granting injunctions must be specific and describe in reasonable detail the act sought to be restrained. *See* TEX. R. CIV. P. 683. An injunction must be definite, clear, and concise, leaving the person enjoined in no doubt about his duties, without calling on him for inferences or conclusions about which persons might differ. *See id.*

The injunction provides that Vaughn is ordered to

> dig a ditch along all the distance of [his] property line which adjoins the property of [the Drennons] and other property owners, such ditch to extend from the cove to the main body of the lake. The ditch is to run parallel to [Vaughn's] property line and is to begin five feet from such property line and extend into [Vaughn's] property an additional five feet, making it a five foot wide ditch with a depth of 18 inches.

In support of his argument, Vaughn cites to a case involving identification of a road "identified on Plaintiff's Exhibit 13 from point 'A' on Farm Road 92 to point 'E' to point 'D' thereon at Farm Road 92." *See Eastex Wildlife Conservation Assoc. v. Jasper*, 450 S.W.2d 904, 917 (Tex. App.–Beaumont 1970, writ ref'd n.r.e.). We find *Jasper* distinguishable as it merely refers to counsel's labels on a trial exhibit. Further, the record in that case included no other description of the location of the road, the surveys upon which it was situated, its width, course, and distance, or other information from which the reviewing court might learn its location. *See id.* at 917-18. Here, the injunction does not refer to other documents. Further, while Vaughn must determine where on the ground the boundary line is, there is no indication in the record that he does not know where the boundary line is or that there is any disagreement between him and his neighbors about its location. He offered pictures he had taken of the boundary line, a survey map showing the boundary line, and an aerial photograph of his property on which he drew in the boundary line while on the witness stand. However, our review of the record disclosed no evidence that Vaughn's property borders water on two sides. Deleting the phrase "such ditch to extend from the cove to the main body of the lake" will cure the problem. We sustain in part and overrule in part Vaughn's eighth issue.

7

## MISCELLANEOUS PROHIBITIONS

In his ninth issue, Vaughn asserts the trial court erred in enjoining him from communicating with the Drennons, causing the Drennons bodily harm, or damaging the Drennons' personal or real property because there is no substantial and probative evidence to support these prohibitions. He argues there is no evidence that he committed any tort which this portion of the injunction would prevent. He further argues there is no evidence of a present intention or imminent threat to damage property or cause bodily harm. In his tenth issue, Vaughn asserts the injunction prohibiting him from communicating with the Drennons infringes on his legal rights.

As explained above, the evidence supports an injunction restraining Vaughn from damaging the Drennons' personal or real property. In the first appeal of this case, we deleted the term of the court's order enjoining Vaughn from communicating with the Drennons because it was not supported by the evidence. *See Vaughn*, 202 S.W.3d at 320. Because the term enjoining Vaughn from causing bodily harm to the Drennons was not challenged on appeal, we affirmed that term. *Id.* at 324. The record does not indicate changed conditions or law regarding communicating with or causing bodily harm to the Drennons. *See Kubala*, 133 S.W.3d at 795. Accordingly, again we delete the injunction against communicating with the Drennons and affirm the injunction against causing bodily harm to the Drennons. We sustain Vaughn's ninth issue in part and overrule it in part. Due to our disposition of this issue, we need not reach Vaughn's tenth issue. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Because water draining from Vaughn's property to the Drennons' property is not in its natural state, the Drennon property is not bound to accept increased drainage from the Vaughn property. The trial court properly enjoined Vaughn from damaging the Drennons' personal or real property and causing bodily harm to the Drennons. The trial court did not err in ordering Vaughn to fill in the existing ditch along the Drennons' fence line and dig a ditch on his property to alleviate a drainage problem on the Drennons' property. The corrective measures ordered by the trial court are neither overly broad nor vague. Because the trial court erred in enjoining Vaughn from communicating with the Drennons, we delete that injunction from the judgment. We also delete the phrase "such ditch to extend from the cove to the main body of the lake."

8

As *modified*, we *affirm* the trial court's judgment.

  SAM GRIFFITH  

Justice

Opinion delivered October 31, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)