KUBALA PUBLIC ADJUSTERS, INC., d/b/a Kubala and Company, John H. Kubala, Thomas A. Ross, Deborah Humble, Richard Poloski, and Mike Connaughton, Appellants,

v.

The UNAUTHORIZED PRACTICE OF LAW COMMITTEE FOR the SUPREME COURT OF TEXAS, Appellee.

No. 06–02–00117–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 11, 2004.

Decided April 2, 2004.

Charles R. "Bob" Dunn, Dunn, Kacal, Adams, Pappas & Law, PC, J. Brantley Durrett, III, Houston, for appellants.

Donald D. Jackson, Mark R. Trachtenberg, Haynes & Boone, LLP, Houston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Kubala Public Adjusters, Inc., d/b/a Kubala and Company, John H. Kubala, Thomas A. Ross, Deborah Humble, Richard Poloski, and Mike Connaughton (collectively, "Kubala") appeal a permanent injunction prohibiting them from performing certain practices related to their public insurance adjusting business. The basis for the injunction is that such practices constitute the unauthorized practice of law.

There are two major problems we confront in analyzing this case. First, after the injunction was issued, the Legislature passed a new law in which it, for the first time, officially created a category of licensed public adjusters. Thus, the law has changed. Second, Kubala has stated to this Court that the facts have changed, because the parties enjoined are in various stages of obtaining their adjuster's licenses or have withdrawn from that type of pursuit. The Unauthorized Practice of Law Committee ("the Committee") admits that both changes exist, but differ with Kubala on the extent of these changes or their impact on this appeal.

Kubala contends the trial court abused its discretion by issuing the permanent injunction because: 1) it is inconsistent with Texas statutory law; 2) it is inconsistent with Texas caselaw; 3) the evidence is insufficient to support it; and 4) it violates the free speech provisions of the federal and state constitutions.

Kubala Public Adjusters, Inc., is a public insurance adjusting company. Through its agents and employees, including the individual appellants, it represents clients on a contingent fee basis. Kubala contracts with clients to document and present first-

party claims to insurance companies, and has been doing so for over ten years. The Unauthorized Practice of Law Committee sued Kubala, seeking an injunction declaring that some of Kubala's business practices constituted the unauthorized practice of law in violation of TEX. GOV'T CODE ANN. § 81.101(a) (Vernon Supp.2004).[1] After a short trial, the court permanently enjoined Kubala from sixteen specific business practices the court found constituted the unauthorized practice of law. The unlawful practices, as set out in the injunction, largely track the language of TEX. PEN. CODE ANN. § 38.123 (Vernon 2003).[2]

At the time the injunction was issued, there was no licensing provision for public adjusters in Texas. Since that date, such a provision has been added by TEX. INS. CODE ANN. art. 21.07–5 (Vernon Supp.2004) (Texas Revised Civil Statutes), which allows a person (including a "firm, company, association, organization, partnership, limited liability company, or corporation") to act as a "public insurance adjuster" *only* when licensed by the state.

In a motion to continue oral argument, Kubala stated that the entirety of the law-suit below was based on the application of the *common law* to the practice of public insurance adjusting and points to the law passed by the Legislature prohibiting common-law public adjusting. Kubala states that, because the appeal is now moot, it should be dismissed and the permanent injunction dissolved. Kubala also states that three of the five individual appellants are not doing this work any more, one has been licensed, and the last, John Kubala, and the company, are in the process of obtaining licenses.

The Committee opposes dissolution of the injunction, contending some activities enjoined by the injunction are not part of the new statute. It points out, for example, that, although the statute allows contingent fees, it is silent as to whether there can be an "assignment" of the recovery for payment of the fees; the injunction prohibits such assignments. The Committee also contends that assignment is in violation of TEX. PEN.CODE ANN. § 38.123(a)(4), because the Code prohibits nonattorneys from accepting assignments of part of a cause of action.

The Committee also contends the new statute does not affect the parts of the

---

1. The State Bar Act defines the "practice of law" as the preparation of legal documents and the rendering of legal services "on behalf of a client." TEX. GOV'T CODE ANN. § 81.101(a) (Vernon Supp.2004).

2. That section defines certain acts as the "unauthorized practice of law" for purposes of criminal prosecution:
 (a) A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person:
 (1) contracts with any person to represent that person with regard to personal causes of action for property damages or personal injury;
 (2) advises any person as to the person's rights and the advisability of making claims for personal injuries or property damages;

(3) advises any person as to whether or not to accept an offered sum of money in settlement of claims for personal injuries or property damages;
(4) enters into any contract with another person to represent that person in personal injury or property damage matters on a contingent fee basis with an attempted assignment of a portion of the person's cause of action; or
(5) enters into any contract with a third person which purports to grant the exclusive right to select and retain legal counsel to represent the individual in any legal proceeding.
TEX. PEN.CODE ANN. § 38.123(a) (Vernon 2003).

injunction forbidding Kubala from (1) interpreting insurance policies, (2) advising their clients about rights and obligations under insurance policies, (3) advising their clients about whether they should make certain claims, (4) advising clients whether they should accept an offered sum in settlement of a claim, or (5) advertise they can do any of these things. These parts of the injunction, the Committee argues, do not conflict with the language of the new statute and should be left intact.

 Kubala has attempted to file with this Court affidavits from the individual appellants and from James Grotta, M.D., to show the current situation of Kubala as either licensed adjusters, seeking to become such, or having left the business. We cannot permit such filings. We are a reviewing court, not a fact-finding court, and we cannot consider newly created evidence which was necessarily not presented to the trial court. The only situation in which we can consider affidavit evidence is when the jurisdiction of this Court to hear the appeal is at issue. *See Yarbrough v. State,* 57 S.W.3d 611, 615 (Tex.App.-Texarkana 2001, pet. ref'd). In our review, therefore, we are constrained to review the factual situation as it existed at the time the trial court issued the injunction.

## Permanent Injunction–Appealability

 This is a permanent injunction and is thus appealable. A permanent injunction that disposes of all issues and parties is a final, appealable judgment. *Striedel v. Striedel,* 15 S.W.3d 163, 164 (Tex.App.-Corpus Christi 2000, no pet.); *James v. Hubbard,* 985 S.W.2d 516, 517 (Tex.App.-San Antonio 1998, no pet.).

## Permanent Injunction Reconsideration by Trial Court

 A trial court, nonetheless, retains jurisdiction to review, open, vacate, or modify a permanent injunction on a showing of changed conditions. *See City of San Antonio v. Singleton,* 858 S.W.2d 411, 412 (Tex.1993) (citing *Smith v. O'Neill,* 813 S.W.2d 501, 502 (Tex.1991)); *Cooke v. Cooke,* 65 S.W.3d 785, 788 (Tex.App.-Dallas 2001, no pet.). The authority to exercise that jurisdiction must be balanced against principles of res judicata. *Singleton,* 858 S.W.2d at 412.[3] Whether right or wrong, a permanent injunction is not subject to impeachment in its application to the conditions that existed at its making. *Id.* (citing *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932)). However, a court cannot be required to ignore significant changes in law or facts if the court is "satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Sys. Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961) (quoting *Swift & Co.,* 286 U.S. at 114–15, 52 S.Ct. 460). Thus, the trial court would also have the authority to alter its injunction if the changed condition consists of a change in control-

---

**3.** The rule is that, as long as the order concerns a continuing situation, the trial court retains power to change, alter, or modify the equitable relief it granted in the form of an injunction on a showing of changed circumstances. *City of Seagoville v. Smith,* 695 S.W.2d 288, 289 (Tex.App.-Dallas 1985, no writ). It is a permissible procedure for a party to file, in the same trial court that rendered the injunction, a motion to modify or vacate the injunction due to changed circumstances. The petition must affirmatively plead facts which bring the case within the court's jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993); *Campsey v. Brumley,* 55 S.W.2d 810, 812 (Tex. Comm'n App.1932, holding approved).

ling law. In other words, the trial court has authority to amend, alter, or dissolve the injunction if either the factual situation or the controlling law has changed since its entry.

**Standard of Review on Direct Appeal**

■■■■ A permanent injunction must not grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity. *Holubec v. Brandenberger,* 111 S.W.3d 32, 39 (Tex. 2003). Nor should a decree of injunction be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his or her rights. *Id.* at 39–40. We review the granting or denial of a permanent injunction for an abuse of discretion. *Operation Rescue–Nat'l v. Planned Parenthood,* 975 S.W.2d 546, 560 (Tex.1998); *Beathard Joint Venture v. W. Houston Airport Corp.,* 72 S.W.3d 426, 432 (Tex.App.-Texarkana 2002, no pet.). Injunctive relief may only be granted on a showing of (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) the absence of an adequate remedy at law. *Coca–Cola Co. v. Harmar Bottling Co.,* 111 S.W.3d 287, 297 (Tex.App.-Texarkana 2003, pet. granted); *Priest v. Tex. Animal Health Comm'n,* 780 S.W.2d 874, 875 (Tex. App.-Dallas 1989, no writ). Where the facts conclusively show that a party is violating the substantive law, the trial court should enjoin the violation, and in such a situation, there is no discretion to be exercised. *Crain v. Unauthorized Practice of Law Comm.,* 11 S.W.3d 328, 332 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); *Green v. Unauthorized Practice of Law Comm.,* 883 S.W.2d 293, 296 (Tex.App.-Dallas 1994, no writ); *Priest,* 780 S.W.2d at 876.

■■■■ The question before this Court involves the impact of the newly enacted legislation on individuals who are not licensed public adjusters. The Committee has suggested we affirm the judgment, but modify the injunction. *See generally Safeguard Bus. Sys., Inc. v. Schaffer,* 822 S.W.2d 640, 644–45 (Tex.App.-Dallas 1991, no writ); *Muniz v. State,* 575 S.W.2d 408, 414–15 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). In so doing, the Committee suggests we parse the language of the current statute into the extensive restrictions written into the injunction.

■■■■ We cannot do what the Committee suggests. Under the facts as we are bound to take them, the current statute cannot apply to Kubala because they are not licensed public adjusters. In this situation, we cannot opine on the nature and state of the law as to licensed public adjusters where the facts show that licensed public adjusters were not the subject of the injunction. We are prohibited from issuing an advisory opinion, the distinctive feature of which is that it decides an abstract question of law without binding the parties. *Valley Baptist Med. Ctr. v. Gonzalez,* 33 S.W.3d 821, 822 (Tex.2000); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993); *see* TEX. CONST. art. II, § 1. If we modified the injunction so as to apply the licensure statute, it could not apply to these defendants, because they are obviously and necessarily not licensed. We would therefore be issuing an advisory opinion, which is outside the constitutional bounds of our authority.

■■■■ Nevertheless, we must determine what impact the change in law would have on the injunction as applied to these unlicensed individuals. A change in the applicable law during the pendency of an appeal will be given effect by a reviewing court. *Blair v. Fletcher,* 849 S.W.2d 344, 345

(Tex.1993). The change, in this case, is drastic. Under Article 21.07–4, Section 2, the statute provides that "[n]o person shall act as or hold himself out to be an adjuster in this state unless then licensed therefor by this state, . . . ." except while in a training period and after meeting specific requirements. The statute goes on to state that any violation is a misdemeanor punishable by a fine and/or six months' confinement. Tex. Ins.Code Ann. art. 21.07–4, § 2 (Vernon Supp.2004) (Texas Revised Civil Statutes).

■ In a situation such as this, in light of the availability of criminal prosecution, we are conscious of the general precept that "enforcement of criminal statutes is normally a matter for criminal courts, by prosecutions conducted by the appropriate prosecuting official empowered by law to do so." *Robinson v. Jefferson County*, 37 S.W.3d 503, 511 (Tex.App.-Texarkana 2001, no pet.).

Another matter broached by the Committee is whether we could appropriately modify the injunction so as to reflect the new realities of the law in a fashion that would appropriately restrict Kubala's activities in connection with their business as public adjusters. The difficulty in doing so lies in the facts. Under the facts as we are bound to review them, none of these parties are licensed public adjusters. Therefore, by statutory fiat, they cannot engage in public adjusting at all. The new statute thus necessarily precludes Kubala from engaging in all of the activities restrained by the current version of the injunction—because the purpose of each section of the injunction is to enjoin them from engaging in specific actions in the course of their business as public adjusters. (Again-*unlicensed* public adjusters.)

The Committee further suggests modifications to the injunction that would bring it in line with the new statute. Such modifications, however, would require analysis and application of the new statute regulating licensed public adjusters—which, as we have repeatedly stated, is outside the facts of this case. We have already explained why we cannot undertake such an analysis. It would also be irrelevant under these facts, because the regulations on *licensed* adjusters would obviously not apply to *unlicensed* adjusters.

The short of it is, unlike the situation when this injunction was issued, a public adjuster can only lawfully do business in Texas as permitted by the licensing statute. We conclude that any analysis of the scope of the new Insurance Code provisions and any potential conflict between those provisions and the Penal Code, as well as any possible application of the general strictures forbidding the unauthorized practice of law, is an analysis outside the boundaries of this case.

As previously recognized, both parties have admitted the facts have changed, although they disagree as to the extent of the change. They must further acknowledge that the controlling law has also changed radically since the injunction was entered. Under these unique circumstances, we affirm the injunction issued by the trial court, based on its application of the law as it existed at that time to the facts as they then existed. That does not, of course, prevent either party from immediately asking the trial court to reconsider the scope or content of the injunction based on the change in facts (which the trial court can consider) and the changes in the controlling law.

We affirm the judgment.