NUMBER 13-10-221-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      
       IN THE INTEREST OF M.L.N. AND A.S.N., CHILDREN
                                                                                                                      

On appeal from the 135th District Court 
of Victoria County, Texas.
                                                                                                                      

MEMORANDUM OPINION

Before Justices Rodriguez, Benavides and Vela
Memorandum Opinion by Justice Vela

          This is an appeal from an order terminating the parental rights of appellant, D.R.N.
to her two children, a son, M.L.N. and a daughter, A.S.N. Appellant argues that the trial
court abused its discretion in finding that she: (1) knowingly placed or allowed the children
to remain in conditions or surroundings that endanger their physical or emotionally well-being; (2) knowingly placed the children with persons who engaged in conduct that
endangers the physical or emotional well-being of the children; and (3) failed to comply
with the provisions of a court order that specifically established the actions necessary for
appellant to obtain the return of the children. She also claims that the trial court erred in: 
(4) finding that termination of her parental rights was in the best interest of the children;
and (5) improperly admitting the testimony of one of the State’s expert witnesses. She
argues by her sixth issue that her trial counsel was ineffective. We affirm.
I. Background
          The State, through the Texas Department of Family and Protective Services, filed
its original petition on March 26, 2009, seeking managing conservatorship and potential
termination of the parental rights of appellant and the children’s father and her husband,
R.A.N. 
          Appellant testified that the children had been previously removed from her care in
2004. At the time of the first removal, appellant said that she had a problem with
marijuana, but that she had been “clean for six years.” She stated that she was currently
on multiple medications for depression, anxiety, attention deficit disorder, and symptoms
of menopause. 
          According to appellant, she and her husband had arguments that the children
witnessed. She described one instance where her husband grabbed her by the chain on
her neck and attempted to choke her. Later, her daughter attempted to do the same thing
to her because she wanted to “be like daddy.” Appellant said that her son saw what had
happened and had a look on his face as if what her husband had done was the “coolest
thing.” Appellant also admitted that she broke a cane and used the severed end in a fight
with her husband. She admitted that she said: ”if I’m not going to see my kids again,
neither are you. I think I bordered the line of insanity.” According to appellant, her
husband had a way of antagonizing her and that, at the time she attacked him with the
broken cane, she had a shoulder injury and he kept poking at her until she could not stand
it anymore. 
          She said that at the time the children were removed from the home the second time,
they were both receiving disability benefits and that her son was on nine or ten
prescriptions for bed wetting, attention deficit hyperactivity disorder (ADHD), and
medications to help him concentrate at school. Appellant testified that she and her
husband used to practice Wicca,


 but they do not practice it anymore. She agreed,
however, that she still has an altar that she no longer uses. She said that the household
was not a safe place for their children while she and her husband resided together. 
Appellant had been in a psychiatric hospital once, and her husband had been in psychiatric
hospitals on multiple occasions. Appellant testified that she did not want her parental
rights terminated. 
          Appellant’s husband testified that he had used drugs with his wife and that she had
a past reputation for entertaining young men in her home. Appellant’s husband is
approximately eighteen years younger than appellant. He said that she locked him out of
the bathroom the morning of the termination hearing, she had previously tried to stab him
with a walking cane, and they had been involved in Wicca. He agreed that the home was
unsafe for the children because of the conflicts between his wife and him that get out of
control. He agreed that appellant was the primary caretaker of the children. He also
testified that he receives disability benefits and has been hospitalized several times for
psychological problems, has been arrested for possession of a controlled substance and
criminal mischief, and has an addiction to pills. 
          Christine Hartley-Harvey, a representative of the homemaker program for the State,
testified that appellant had made strides by having the home in good order, but was not “on
task” with parenting skills. According to Hartley-Harvey, the couple does not communicate
properly with the children, and appellant and her daughter compete for appellant’s
husband’s attention. She ultimately concluded that she did not believe “either one of them
has the capability to parent their children effectively and nurturing—you know, being
nurturing parents. I think they both have the desire but I don’t think they have the
capability.” She felt that neither parent has the ability to teach the children right from
wrong, to resolve conflicts, to teach them how to resolve conflicts, or to show the children
proper affection. 
          Lucy Holder, a licensed counselor, testified that she began counseling appellant in
2004. She opined that the couple was not prepared to provide a safe physical and
emotional home for the children. According to Holder, neither parent has any foundation
for parenting. She described the parents’ relationship with the children as stiff and
awkward. They do not know how to hug or nurture their children. Holder believed,
however, that both parents love their children.
          Karen Smithey, a caseworker for Child Protective Services, testified that neither
parent had performed their respective plan of services in order to have the children
returned to them. She opined that it was in the best interest of the children that appellant
and her husband’s parental rights be terminated. Smithey testified that she felt like
appellant’s husband was trying to “gas light” appellant, which Smithey described as trying
to make the other person crazy. 
          At the close of the evidence, the trial court decided to terminate appellant’s parental
rights, but continued a decision in her husband’s case for six months. This appeal ensued.
II. Standard of Review for evidentiary issues
          In hearings regarding the termination of parental rights, due process requires that
the State prove its case for termination by clear and convincing evidence. In re J.F.C., 96
S.W.3d 256, 263 (Tex. 2002) (citing Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct.
1388, 71 L.Ed.2d 599 (1982); In re G. M., 596 S.W.2d 846, 847 (Tex. 1980)). The clear
and convincing standard is defined as the “measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.” Tex. Fam. Code Ann. § 101.007 (Vernon 2008).
          Taking this elevated standard of review into consideration, an appellate court,
reviewing the legal sufficiency of the evidence in a parental termination case, must
determine whether a fact-finder could reasonably form a firm belief or conviction that the
grounds for termination were proven. In re J.F.C., 96 S.W.3d at 265-66. All evidence
should be reviewed “in the light most favorable to the judgment.” Id. at 266. This means
that an appellate court must assume that the fact-finder resolved any disputed facts in
favor of its finding if a reasonable fact-finder could have done so. An appellate court must
also disregard all evidence that a reasonable fact-finder could have disbelieved. City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). “If [an appellate court] determines that
no reasonable fact-finder could form a firm belief or conviction that the matter that must be
proven is true, then that court must conclude that the evidence is legally insufficient.” In
re J.F.C., 96 S.W.3d at 266.
          Similarly, the clear and convincing standard of review in a parental termination
hearing requires a higher level of evidence in order to be factually sufficient. See In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002). The appellate standard for reviewing parental
termination factual findings is whether the evidence is such that a fact-finder could
reasonably form a firm belief or conviction about the truth of the State's allegations. Id.
          In reviewing the evidence for factual sufficiency, we must determine whether, on the
entire record, a fact-finder could reasonably form a firm conviction or belief that the parent
violated a provision of section 161.001(1) of the family code and that the termination of the
parent's parental rights would be in the best interest of the child. In re M.C.T., 250 S.W.3d
161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing In re C.H., 89 S.W.3d at 28). “If, in
light of the entire record, the disputed evidence that a reasonable fact-finder could not have
credited in favor of the finding is so significant that a fact-finder could not have reasonably
formed a firm belief or conviction in the truth of its finding, then the evidence is factually
insufficient.” Id. (citing In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006)). 
          When termination is based on multiple grounds under section 161.001(1), a court
of appeals must affirm the order if the evidence is sufficient to support any one of the
grounds found by the district court. See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).
 
 
III. Statutory Grounds for Termination of Parental Rights
          Section 161.001 of the Texas Family Code sets forth the grounds upon which the
court may involuntarily terminate a parent-child relationship. Tex. Fam. Code Ann. §
161.001 (Vernon Supp. 2009). 
          The trial court may order termination if it finds by clear and convincing evidence that
the parent has knowingly placed or knowingly allowed the child to remain in conditions or
surroundings which endanger the physical or emotional well-being of the child. Id. §
161.001(1)(D). Endangerment is defined as exposing to loss or injury, to jeopardize. In
re J.T.G., 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). Under subsection
(D), we examine the evidence related to the environment of the child to determine if the
environment is the source of endangerment to the child’s physical or emotional well-being. 
In re D.T., 34 S.W.3d 625, 632 (Tex. App.–Fort Worth 2000, pet denied). 
          The parent’s conduct does not necessarily have to be directed at the child. See
Vasquez v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 195 (Tex.
App.–Houston [1st Dist.] 2005, pet. denied). Conduct that subjects a child to a life of
uncertainty and instability endangers a child’s physical and emotional well-being. See In
re S.D., 980 S.W.2d 758, 763 (Tex. App.–San Antonio 1998, pet. denied). A parent's
mental state may be considered in determining whether a child is endangered if that
mental state allows the parent to engage in conduct that jeopardizes the physical or
emotional well-being of the child. In re J.I.T.P., 99 S.W.3d 841, 845 (Tex. App.–Houston
[14th Dist.] 2003, no pet.); see also In re C.M.B., 204 S.W.3d 886, 895 (Tex. App.–Dallas
2006, pet. denied). Abusive or violent conduct by a parent may produce an environment
that endangers the physical or emotional well-being of the child. In re J.T.G., 121 S.W.3d
117, 125 (Tex. App.–Fort Worth 2003, no pet.). The requisite endangerment may be found
if the evidence shows a parent's course of conduct that has the effect of endangering the
child's physical or emotional well-being. See Smith v. Sims, 801 S.W.2d 247, 250 (Tex.
App.–Houston [14th Dist.] 1990, no writ). 
          In this case, the trial court found that appellant had: (1) knowingly placed or allowed
the children to remain in conditions or surroundings which endanger the physical or
emotional well-being of the children; (2) engaged in conduct or knowingly placed the
children with persons who engaged in conduct which endangers the physical of emotional
well-being of the children; and (3) failed to comply with the provisions of a court order that
specifically established the actions necessary for the return of the children who have been
in the permanent or temporary managing conservatorship of the Department of Family and
Protective Services for not less than nine months as a result of the children’s removal form
the parent under chapter 262 for the abuse or neglect of the children. Id. § 161.001(1)(D),
(E), (O). The State must also prove that termination is in the best interest of the children. 
Id. § 161.001(2). 
IV. Analysis
          The evidence offered at trial showed a pattern of violent altercations between
appellant and her husband in the children’s presence. Later, one of the children was
mimicking that behavior. There was conflicting evidence with respect to whether appellant
continued to use drugs. Appellant agreed that the home was not a safe place for the
children while she and her husband resided there. The husband agreed that the children
were not safe while the two of them were at home. Yet, as of the date of the hearing, the
couple still resided in the same home. The husband had previously signed a
relinquishment of parental rights. Later, he returned to the home to live with appellant. 
Appellant suffered from depression. The experts who testified all agreed that the parental
rights of both parents should be terminated based on the fact that they had worked with
both of them extensively and saw no progress with respect to parenting skills.
          We have carefully reviewed this record. Looking at all of the evidence in the light
most favorable to the trial court’s determination, we hold that a reasonable trier of fact
could reasonably have formed a firm belief or conviction that appellant knowingly placed
or allowed the children to remain in conditions or surroundings that endangered their
physical well-being and that she engaged in conduct or knowingly placed the children with
persons who engaged in conduct that endangered the children’s physical or emotional
well-being. Both legally and factually sufficient evidence support the trial court’s findings
under section 161.001(1)(D) and (E) of the Texas Family Code. Tex. Fam. Code Ann. §
161.001(1)(D), (E). Thus, we do not need to address appellant’s issue with respect to the
trial court’s decision under section 161.001(1)(O) of the family code. Id. § 161.001(1)(O). 
We overrule appellant’s first and second issues and decline to address the third issue as
it is not dispositive. See Tex. R. App. P. 47.1. 
V. Best Interest of the Children
          By appellant’s fourth issue, she argues that the trial court erred in finding that
termination was in the best interest of the children. In determining whether termination is
in a child's best interest, the fact-finder may consider the following non-exhaustive list of
factors outlined by the Texas Supreme Court: (1) the desires of the child; (2) the present
and future physical and emotional needs of the child; (3) the present and future emotional
and physical danger to the child; (4) the parental abilities of the person seeking custody;
(5) the programs available to assist those persons in promoting the best interest of the
child; (6) the plan for the child by those individuals or by the agency seeking custody; (7)
the acts or omissions of the parent that may indicate that the existing parent-child
relationship is not appropriate; (8) the stability of the home or proposed placement; and (9)
any excuse for the acts or omissions of the parents. Holley v. Adams, 544 S.W.2d 367,
371-72 (Tex. 1976); see In re D.M., 58 S.W.3d 801, 814 (Tex. App.–Fort Worth 2001, no
pet.). “‘Best interest’ does not require proof of any unique set of factors, nor does it limit
proof to any specific factors.” In re D.M., 58 S.W.3d at 814. The party seeking termination
need not prove that each of the Holley factors favor termination, and the same evidence
of acts or omissions used under section 161.001(1) of the family code may be probative
in determining the best interests of the child. See In re A.A.A., 265 S.W.3d 507, 516 (Tex.
App.–Houston [1st Dist.] 2008, pet. denied).
          There was testimony that the children were doing better in foster care. One of the
children, who had previously taken ten different medications, was now taking only three. 
They were doing well at school. The children were doing well emotionally. During visits
with the children, appellant was awkward. For instance, Harvey-Hartley testified that the
family was very disengaged. One of the children was observed as being left out by both
parents, while appellant and her daughter competed for the attention of appellant’s
husband. There was testimony that neither appellant nor her husband had any foundation
for parenting and that when the parents came to see the children, they did not hug them
or kneel down to talk with them. Taking into consideration all of the evidence in the record,
we hold that a reasonable fact-finder could have formed the belief or conviction that it was
in the best interest of the children to terminate appellant’s parental rights. Thus, the
evidence supporting the trial court’s best interest finding is legally and factually sufficient.
VI. Admission of Evidence
          By appellant’s fifth issue, she argues that the trial court abused its discretion in
admitting the testimony of Lucy Holder, one of the State’s witnesses, because it was
conjectural and speculative and she lacked knowledge regarding the subject matter for
which she was called. Under this issue, appellant cited no authority for her position that
the witness was unqualified. Regardless, Holder testified that she was a clinical social
worker, a licensed professional counselor, a licensed marriage and family therapist and a
licensed chemical dependency counselor with twenty years of experience. She said that
she had been counseling with appellant since 2004, and with appellant’s husband for
several months. Her testimony was based on her opinions from having counseled both
appellant and her husband. There is nothing to suggest that her opinions were based on
speculation or that she was unqualified to render the opinions that she did. We overrule
appellant’s fifth issue. 
VII. Ineffective Assistance of Counsel 
          By her sixth issue, appellant urges that trial counsel was ineffective because
counsel failed to subpoena or call medical experts that could have explained appellant’s
medical diagnosis. She thought that counsel should have called various treating
physicians, because they could vouch for her ability to parent. She also thought that there
were lay witnesses that could have attested to her parenting abilities. Further, she argued
that her attorney could have elicited testimony on cross-examination that would have
shown that she was in compliance with the State’s service plan for the family. Finally, she
argues that counsel’s final argument was not substantive and that her husband’s attorney,
in effect, did a better job, resulting in his case being continued for six months and avoiding
termination of his parental rights. 
          In evaluating claims of ineffective assistance of counsel in civil parental-rights
termination cases, we begin with the standard set forth by the United States Supreme
Court for criminal cases in Strickland v. Washington. In re H.R.M. 209 S.W.3d 105, 111
(Tex. 2006). Under the Strickland standard, a parent must show both that (1) the
attorney's performance was deficient and fell below an objective standard of
reasonableness, and (2) the deficient performance prejudiced her defense. Strickland v.
Washington, 466 U.S. 668, 687-88, 694 (1984).
           The Texas Supreme Court has stated that an ineffective assistance of counsel
claim “requires more than merely showing that appointed counsel was ineffective.” In re
J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). The parent must also show that “counsel's
deficient performance prejudiced the defense.” Id. (quoting Strickland, 466 U.S. at 687). 
To show prejudice, the parent “must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would have been different.”
Strickland, 466 U.S. at 694. An ineffective assistance claim requires a showing of a
deficient performance by counsel so serious as to deny the defendant a fair and reliable
trial. In re J.O.A., 283 S.W.3d at 342. 
 
          With respect to the first prong of Strickland, we presume counsel's action fell within
the range of reasonable and professional assistance. Mallett v. State, 65 S.W.3d 59, 63
(Tex. Crim. App. 2001). To overcome this presumption, allegations of ineffectiveness must
be firmly founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. In re K.K., 180 S.W.3d 681, 685 (Tex. App.–Waco 2005, no pet.); see
also In re J.L., No. 13-07-00345-CV, 2010 WL 746702, at *9 (Tex. App.–Corpus Christi
Mar. 4, 2010, no pet.). There is a strong presumption counsel's actions and decisions are
motivated by sound trial strategy. Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005). When the record is silent as to counsel's strategy, we cannot simply speculate his
or her performance was deficient. In re K.M.H.,181 S.W.3d 1,7 n.1 (Tex. App.–Houston
[14th Dist.] 2005, no pet.). Counsel's performance will be sufficient if any strategic motive
can be envisioned and will be considered deficient only if “the conduct was so outrageous
that no competent attorney would have engaged in it.” Andrews v. State, 159 S.W.3d 98,
101 (Tex. Crim. App. 2005). The standard for reviewing trial counsel's performance “has
never been interpreted to mean that the accused is entitled to errorless or perfect counsel.” 
Ex Parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).
          Trial counsel should be afforded an opportunity to explain his or her conduct before
being found to have provided ineffective assistance. In re S.L., 188 S.W.3d 388, 395 
(Tex. App.–Dallas 2006, no pet.) (citing Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim.
App. 2002)). Otherwise, it is a rare occasion when a finding of ineffective assistance can
be made from the trial record alone. See M.C.T., 250 S.W.3d161,172 (Tex. App.–Fort
Worth 2008, no pet.). Although appellant filed a motion for new trial, the record does not
reflect that a hearing on the motion for new trial was held. In the absence of an evidentiary
record, developed at a motion for new trial hearing, it is very difficult to show that counsel’s
performance was deficient. Gibbs v. State, 7 S.W.3d 175, 179 (Tex. App.–Houston [1st
Dist.] 1999, pet. denied); see also In re T.J.H., No. 13-06-00407-CV, 2009 WL 2624114,
at *21 (Tex. App.–Corpus Christi Aug. 26, 2009, pet. denied) (mem. op.). When there is
no hearing on a motion for new trial, an affidavit from trial counsel becomes almost vital
to the success of an effectiveness of counsel claim. Howard v. State, 894 S.W.2d 104,
107 (Tex. App.–Beaumont 1995, pet. ref’d). Counsel for the State attached to his brief his
own affidavit recounting an interview he had with appellant’s counsel concerning her
decision to refrain from calling certain witnesses. We do not consider his affidavit as it is
not properly part of the record. See Tex. R. App. P. 34.1; Kubala Pub. Adjusters, Inc., v.
Unauth. Practice of Law Comm., 133 S.W.3d 790, 794 (Tex. App.–Texarkana 2004, no
pet.).
          Regardless, appellant has not rebutted the presumption that her trial counsel utilized
reasonable professional judgment in her decision making. We have no evidence before
us with respect to counsel’s reason for not calling certain witnesses that appellant believed
would have assisted in her case. The fact that appellant’s husband did not get his parental
rights terminated does not necessarily reflect that appellant did not receive effective
assistance. It was for the trial court to judge the demeanor of the witnesses as well as their
credibility. We will not speculate about appellant’s counsel’s strategic decisions. Thus, we
cannot find her counsel ineffective on the asserted grounds. We overrule appellant’s sixth
issue.
VIII. Conclusion
          Having overruled all of appellant’s dispositive issues, we affirm the judgment of the
trial court. 
          
 ROSE VELA
                                                                               Justice
 
Delivered and filed the
16th day of September, 2010.