

# NUMBER 13-10-221-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF M.L.N. AND A.S.N., CHILDREN

**On appeal from the 135th District Court
of Victoria County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides and Vela
Memorandum Opinion by Justice Vela**

This is an appeal from an order terminating the parental rights of appellant, D.R.N. to her two children, a son, M.L.N. and a daughter, A.S.N. Appellant argues that the trial court abused its discretion in finding that she: (1) knowingly placed or allowed the children to remain in conditions or surroundings that endanger their physical or emotionally well-being; (2) knowingly placed the children with persons who engaged in conduct that

endangers the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for appellant to obtain the return of the children. She also claims that the trial court erred in: (4) finding that termination of her parental rights was in the best interest of the children; and (5) improperly admitting the testimony of one of the State's expert witnesses. She argues by her sixth issue that her trial counsel was ineffective. We affirm.

## I. BACKGROUND

The State, through the Texas Department of Family and Protective Services, filed its original petition on March 26, 2009, seeking managing conservatorship and potential termination of the parental rights of appellant and the children's father and her husband, R.A.N.

Appellant testified that the children had been previously removed from her care in 2004. At the time of the first removal, appellant said that she had a problem with marijuana, but that she had been "clean for six years." She stated that she was currently on multiple medications for depression, anxiety, attention deficit disorder, and symptoms of menopause.

According to appellant, she and her husband had arguments that the children witnessed. She described one instance where her husband grabbed her by the chain on her neck and attempted to choke her. Later, her daughter attempted to do the same thing to her because she wanted to "be like daddy." Appellant said that her son saw what had happened and had a look on his face as if what her husband had done was the "coolest thing." Appellant also admitted that she broke a cane and used the severed end in a fight with her husband. She admitted that she said: "if I'm not going to see my kids again,

2

neither are you. I think I bordered the line of insanity." According to appellant, her husband had a way of antagonizing her and that, at the time she attacked him with the broken cane, she had a shoulder injury and he kept poking at her until she could not stand it anymore.

She said that at the time the children were removed from the home the second time, they were both receiving disability benefits and that her son was on nine or ten prescriptions for bed wetting, attention deficit hyperactivity disorder (ADHD), and medications to help him concentrate at school. Appellant testified that she and her husband used to practice Wicca,[1] but they do not practice it anymore. She agreed, however, that she still has an altar that she no longer uses. She said that the household was not a safe place for their children while she and her husband resided together. Appellant had been in a psychiatric hospital once, and her husband had been in psychiatric hospitals on multiple occasions. Appellant testified that she did not want her parental rights terminated.

Appellant's husband testified that he had used drugs with his wife and that she had a past reputation for entertaining young men in her home. Appellant's husband is approximately eighteen years younger than appellant. He said that she locked him out of the bathroom the morning of the termination hearing, she had previously tried to stab him with a walking cane, and they had been involved in Wicca. He agreed that the home was unsafe for the children because of the conflicts between his wife and him that get out of

---

[1]Wicca is defined as "a community of followers of the Wicca religion; the polytheistic nature religion of modern witchcraft whose central deity is a mother goddess; claims origins in pre-Christian pagan religions of western Europe." WordNet Search 3.0, http://wordnetweb.princeton.edu/perl/webwn (last visited Sept. 8, 2010).

control. He agreed that appellant was the primary caretaker of the children. He also testified that he receives disability benefits and has been hospitalized several times for psychological problems, has been arrested for possession of a controlled substance and criminal mischief, and has an addiction to pills.

Christine Hartley-Harvey, a representative of the homemaker program for the State, testified that appellant had made strides by having the home in good order, but was not "on task" with parenting skills. According to Hartley-Harvey, the couple does not communicate properly with the children, and appellant and her daughter compete for appellant's husband's attention. She ultimately concluded that she did not believe "either one of them has the capability to parent their children effectively and nurturing—you know, being nurturing parents. I think they both have the desire but I don't think they have the capability." She felt that neither parent has the ability to teach the children right from wrong, to resolve conflicts, to teach them how to resolve conflicts, or to show the children proper affection.

Lucy Holder, a licensed counselor, testified that she began counseling appellant in 2004. She opined that the couple was not prepared to provide a safe physical and emotional home for the children. According to Holder, neither parent has any foundation for parenting. She described the parents' relationship with the children as stiff and awkward. They do not know how to hug or nurture their children. Holder believed, however, that both parents love their children.

Karen Smithey, a caseworker for Child Protective Services, testified that neither parent had performed their respective plan of services in order to have the children returned to them. She opined that it was in the best interest of the children that appellant

4

and her husband's parental rights be terminated. Smithey testified that she felt like appellant's husband was trying to "gas light" appellant, which Smithey described as trying to make the other person crazy.

At the close of the evidence, the trial court decided to terminate appellant's parental rights, but continued a decision in her husband's case for six months. This appeal ensued.

## II. STANDARD OF REVIEW FOR EVIDENTIARY ISSUES

In hearings regarding the termination of parental rights, due process requires that the State prove its case for termination by clear and convincing evidence. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002) (citing *Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re G. M.,* 596 S.W.2d 846, 847 (Tex. 1980)). The clear and convincing standard is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

Taking this elevated standard of review into consideration, an appellate court, reviewing the legal sufficiency of the evidence in a parental termination case, must determine whether a fact-finder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.F.C.*, 96 S.W.3d at 265-66. All evidence should be reviewed "in the light most favorable to the judgment." *Id.* at 266. This means that an appellate court must assume that the fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could have done so. An appellate court must also disregard all evidence that a reasonable fact-finder could have disbelieved. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). "If [an appellate court] determines that

5

no reasonable fact-finder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *In re J.F.C.,* 96 S.W.3d at 266.

Similarly, the clear and convincing standard of review in a parental termination hearing requires a higher level of evidence in order to be factually sufficient. *See In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002). The appellate standard for reviewing parental termination factual findings is whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.*

In reviewing the evidence for factual sufficiency, we must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) of the family code and that the termination of the parent's parental rights would be in the best interest of the child. *In re M.C.T.,* 250 S.W.3d 161, 168 (Tex. App.–Fort Worth 2008, no pet.) (citing *In re C.H.,* 89 S.W.3d at 28). "If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not have reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *Id.* (citing *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006)).

When termination is based on multiple grounds under section 161.001(1), a court of appeals must affirm the order if the evidence is sufficient to support any one of the grounds found by the district court. *See In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003).

### III. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

Section 161.001 of the Texas Family Code sets forth the grounds upon which the court may involuntarily terminate a parent-child relationship. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2009).

The trial court may order termination if it finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *Id*. § 161.001(1)(D). Endangerment is defined as exposing to loss or injury, to jeopardize. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). Under subsection (D), we examine the evidence related to the environment of the child to determine if the environment is the source of endangerment to the child's physical or emotional well-being. *In re D.T.*, 34 S.W.3d 625, 632 (Tex. App.–Fort Worth 2000, pet denied).

The parent's conduct does not necessarily have to be directed at the child. *See Vasquez v. Tex. Dep't of Protective & Regulatory Servs.,* 190 S.W.3d 189, 195 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). Conduct that subjects a child to a life of uncertainty and instability endangers a child's physical and emotional well-being. *See In re S.D.,* 980 S.W.2d 758, 763 (Tex. App.–San Antonio 1998, pet. denied). A parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child. *In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.–Houston [14th Dist.] 2003, no pet.); *see also In re C.M.B.,* 204 S.W.3d 886, 895 (Tex. App.–Dallas 2006, pet. denied). Abusive or violent conduct by a parent may produce an environment

7

that endangers the physical or emotional well-being of the child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.–Fort Worth 2003, no pet.). The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being. *See Smith v. Sims,* 801 S.W.2d 247, 250 (Tex. App.–Houston [14th Dist.] 1990, no writ).

In this case, the trial court found that appellant had: (1) knowingly placed or allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical of emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal form the parent under chapter 262 for the abuse or neglect of the children. *Id*. § 161.001(1)(D), (E), (O). The State must also prove that termination is in the best interest of the children. *Id*. § 161.001(2).

## IV. ANALYSIS

The evidence offered at trial showed a pattern of violent altercations between appellant and her husband in the children's presence. Later, one of the children was mimicking that behavior. There was conflicting evidence with respect to whether appellant continued to use drugs. Appellant agreed that the home was not a safe place for the children while she and her husband resided there. The husband agreed that the children

8

were not safe while the two of them were at home. Yet, as of the date of the hearing, the couple still resided in the same home. The husband had previously signed a relinquishment of parental rights. Later, he returned to the home to live with appellant. Appellant suffered from depression. The experts who testified all agreed that the parental rights of both parents should be terminated based on the fact that they had worked with both of them extensively and saw no progress with respect to parenting skills.

We have carefully reviewed this record. Looking at all of the evidence in the light most favorable to the trial court's determination, we hold that a reasonable trier of fact could reasonably have formed a firm belief or conviction that appellant knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical well-being and that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. Both legally and factually sufficient evidence support the trial court's findings under section 161.001(1)(D) and (E) of the Texas Family Code. TEX. FAM. CODE ANN. § 161.001(1)(D), (E). Thus, we do not need to address appellant's issue with respect to the trial court's decision under section 161.001(1)(O) of the family code. *Id*. § 161.001(1)(O). We overrule appellant's first and second issues and decline to address the third issue as it is not dispositive. *See* TEX. R. APP. P. 47.1.

## V. BEST INTEREST OF THE CHILDREN

By appellant's fourth issue, she argues that the trial court erred in finding that termination was in the best interest of the children. In determining whether termination is in a child's best interest, the fact-finder may consider the following non-exhaustive list of factors outlined by the Texas Supreme Court: (1) the desires of the child; (2) the present

9

and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the person seeking custody; (5) the programs available to assist those persons in promoting the best interest of the child; (6) the plan for the child by those individuals or by the agency seeking custody; (7) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate; (8) the stability of the home or proposed placement; and (9) any excuse for the acts or omissions of the parents. *Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976); *see In re D.M.,* 58 S.W.3d 801, 814 (Tex. App.–Fort Worth 2001, no pet.). "'Best interest' does not require proof of any unique set of factors, nor does it limit proof to any specific factors." *In re D.M.,* 58 S.W.3d at 814. The party seeking termination need not prove that each of the *Holley* factors favor termination, and the same evidence of acts or omissions used under section 161.001(1) of the family code may be probative in determining the best interests of the child. *See In re A.A.A.,* 265 S.W.3d 507, 516 (Tex. App.–Houston [1st Dist.] 2008, pet. denied).

There was testimony that the children were doing better in foster care. One of the children, who had previously taken ten different medications, was now taking only three. They were doing well at school. The children were doing well emotionally. During visits with the children, appellant was awkward. For instance, Harvey-Hartley testified that the family was very disengaged. One of the children was observed as being left out by both parents, while appellant and her daughter competed for the attention of appellant's husband. There was testimony that neither appellant nor her husband had any foundation for parenting and that when the parents came to see the children, they did not hug them or kneel down to talk with them. Taking into consideration all of the evidence in the record,

we hold that a reasonable fact-finder could have formed the belief or conviction that it was in the best interest of the children to terminate appellant's parental rights. Thus, the evidence supporting the trial court's best interest finding is legally and factually sufficient.

## VI. ADMISSION OF EVIDENCE

By appellant's fifth issue, she argues that the trial court abused its discretion in admitting the testimony of Lucy Holder, one of the State's witnesses, because it was conjectural and speculative and she lacked knowledge regarding the subject matter for which she was called. Under this issue, appellant cited no authority for her position that the witness was unqualified. Regardless, Holder testified that she was a clinical social worker, a licensed professional counselor, a licensed marriage and family therapist and a licensed chemical dependency counselor with twenty years of experience. She said that she had been counseling with appellant since 2004, and with appellant's husband for several months. Her testimony was based on her opinions from having counseled both appellant and her husband. There is nothing to suggest that her opinions were based on speculation or that she was unqualified to render the opinions that she did. We overrule appellant's fifth issue.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

By her sixth issue, appellant urges that trial counsel was ineffective because counsel failed to subpoena or call medical experts that could have explained appellant's medical diagnosis. She thought that counsel should have called various treating physicians, because they could vouch for her ability to parent. She also thought that there were lay witnesses that could have attested to her parenting abilities. Further, she argued

11

that her attorney could have elicited testimony on cross-examination that would have shown that she was in compliance with the State's service plan for the family. Finally, she argues that counsel's final argument was not substantive and that her husband's attorney, in effect, did a better job, resulting in his case being continued for six months and avoiding termination of his parental rights.

In evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases, we begin with the standard set forth by the United States Supreme Court for criminal cases in *Strickland v. Washington*. *In re H.R.M.* 209 S.W.3d 105, 111 (Tex. 2006). Under the *Strickland* standard, a parent must show both that (1) the attorney's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced her defense. *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984).

The Texas Supreme Court has stated that an ineffective assistance of counsel claim "requires more than merely showing that appointed counsel was ineffective." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). The parent must also show that "counsel's deficient performance prejudiced the defense." *Id.* (quoting *Strickland,* 466 U.S. at 687). To show prejudice, the parent "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. An ineffective assistance claim requires a showing of a deficient performance by counsel so serious as to deny the defendant a fair and reliable trial. *In re J.O.A.*, 283 S.W.3d at 342.

With respect to the first prong of *Strickland*, we presume counsel's action fell within the range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). To overcome this presumption, allegations of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *In re K.K.,* 180 S.W.3d 681, 685 (Tex. App.–Waco 2005, no pet.); *see also In re J.L.,* No. 13-07-00345-CV, 2010 WL 746702, at *9 (Tex. App.–Corpus Christi Mar. 4, 2010, no pet.). There is a strong presumption counsel's actions and decisions are motivated by sound trial strategy. *Salinas v. State,* 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). When the record is silent as to counsel's strategy, we cannot simply speculate his or her performance was deficient. *In re K.M.H.,*181 S.W.3d 1,7 n.1 (Tex. App.–Houston [14th Dist.] 2005, no pet.). Counsel's performance will be sufficient if any strategic motive can be envisioned and will be considered deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State,* 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel." *Ex Parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

Trial counsel should be afforded an opportunity to explain his or her conduct before being found to have provided ineffective assistance. *In re S.L.,* 188 S.W.3d 388, 395 (Tex. App.–Dallas 2006, no pet.) (citing *Bone v. State,* 77 S.W.3d 828, 836 (Tex. Crim. App. 2002)). Otherwise, it is a rare occasion when a finding of ineffective assistance can be made from the trial record alone. *See M.C.T.,* 250 S.W.3d161,172 (Tex. App.–Fort Worth 2008, no pet.). Although appellant filed a motion for new trial, the record does not

13

reflect that a hearing on the motion for new trial was held. In the absence of an evidentiary record, developed at a motion for new trial hearing, it is very difficult to show that counsel's performance was deficient. *Gibbs v. State*, 7 S.W.3d 175, 179 (Tex. App.–Houston [1st Dist.] 1999, pet. denied); *see also In re T.J.H.*, No. 13-06-00407-CV, 2009 WL 2624114, at *21 (Tex. App.–Corpus Christi Aug. 26, 2009, pet. denied) (mem. op.). When there is no hearing on a motion for new trial, an affidavit from trial counsel becomes almost vital to the success of an effectiveness of counsel claim. *Howard v. State*, 894 S.W.2d 104, 107 (Tex. App.–Beaumont 1995, pet. ref'd). Counsel for the State attached to his brief his own affidavit recounting an interview he had with appellant's counsel concerning her decision to refrain from calling certain witnesses. We do not consider his affidavit as it is not properly part of the record. *See* Tex. R. App. P. 34.1; *Kubala Pub. Adjusters, Inc., v. Unauth. Practice of Law Comm.*, 133 S.W.3d 790, 794 (Tex. App.–Texarkana 2004, no pet.).

Regardless, appellant has not rebutted the presumption that her trial counsel utilized reasonable professional judgment in her decision making. We have no evidence before us with respect to counsel's reason for not calling certain witnesses that appellant believed would have assisted in her case. The fact that appellant's husband did not get his parental rights terminated does not necessarily reflect that appellant did not receive effective assistance. It was for the trial court to judge the demeanor of the witnesses as well as their credibility. We will not speculate about appellant's counsel's strategic decisions. Thus, we cannot find her counsel ineffective on the asserted grounds. We overrule appellant's sixth issue.

14

## VIII. Conclusion

Having overruled all of appellant's dispositive issues, we affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
16th day of September, 2010.